**Mark GREEN et al., Plaintiffs,**

**v.**

**DEPARTMENT OF COMMERCE, Defendant.**

**Civ. A. No. 77–0363.**

United States District Court, District of Columbia.

March 30, 1979.

Girardeau A. Spann, David C. Valdeck, Washington, D. C., for plaintiffs.

Earl J. Silbert, U. S. Atty., Royce C. Lamberth, Dennis A. Dutterer, Asst. U. S. Attys., Washington, D. C., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CHARLES R. RICHEY, District Judge.

Plaintiffs bring this suit, pursuant to the Freedom of Information Act, to compel the defendant Department of Commerce to produce certain reports which it received concerning boycott requests. Because the defendant has not shown that these documents fall within any statutory exemption, the Court finds that the Department of Commerce must produce them. However, some of these documents *may* contain confidential business information. In order to protect the submitters of this information, the Court will use its equity powers to order the defendant to publish a notice of disclosure; if an interested party submits a specific request for nondisclosure, then the status of the requested document under 5 U.S.C. § 552(b)(4), will be subject to reconsideration, first, by the parties and then, if necessary, by the Court.

The Court applies the following legal principles:

■ 1. The elements of exemption 4 of the Freedom of Information Act, 5 U.S.C. § 552(b)(4) are: (a) the information must be financial or commercial in nature; (b) it must be obtained from a person; and (c) it must be confidential or privileged. The party asserting the exemption must prove its existence by a preponderance of the evidence.

■ 2. Commercial information is "confidential," if its disclosure is likely (a) to impair the Government's ability to obtain necessary information in the future; or (b) to cause substantial harm to the competitive position of the person from whom the information was obtained. *National Parks and Conservation Association v. Kleppe,* 178 U.S.App.D.C. 376, 380–81, 547 F.2d 673, 677–78 (1976) (*National Parks* II).

3. Although *National Parks and Conservation Association v. Morton,* 162 U.S.App. D.C. 223, 228, 498 F.2d 765, 770 (1974) (*National Parks* I), indicates that, under certain

circumstances, a statutory obligation to provide the Government with information will preclude the Government from contending that disclosure will impair its ability to obtain such information, this does not mean that *every* statutory obligation removes the Government's right to rely on the "impairment" prong of the *National Parks* II definition of the confidentiality exemption. In *National Parks* I, the Government acquired the data at issue in issuing licenses to concessions in national parks. Thus, in this *quid pro quo* transaction, enforcement of the statutory obligation was readily available; by disclosing the data to others, the Government would not be interfering with its ability to gather the information. Yet, when the Government lacks the means to compel strict enforcement, it would be unrealistic to hold that a mere legal obligation sufficiently protects the Government's interests in collecting the relevant data. This sort of legal fiction should not be allowed to interfere with the smooth functioning of the Government. Thus, a statutory obligation to provide the Government with information is only a factor for the Court to consider in determining whether or not disclosure will impair the Government's ability to gather the data.

4. In actions under 5 U.S.C. § 552(a), the Court's broad equity powers are not curtailed. *See Renegotiation Board v. Bannercraft Clothing Corp.,* 415 U.S. 1, 18–20, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974). The Court's general equity powers include the authority to compel disclosure, subject to pre-conditions designed to protect the interests of parties not before the Court.

5. In *American Jewish Congress v. Kreps,* 187 U.S.App.D.C. 413, 421, n. 65, 574 F.2d 624, 632 n. 65 (1978), the Court of Appeals undermined the rationale of this Court's Memorandum Opinion of November 15, 1977. This memorandum opinion had upheld the Department's claim of exemption under 5 U.S.C. § 552(b)(3).

## A. FINDINGS OF FACT

The plaintiffs' FOIA request calls for the production of approximately 62,000 "boycott reports." Relying on exemption 4, 5 U.S.C. § 552(b)(4), the defendant asserts that portions of these reports are "confidential" business information.

At a trial held pursuant to *National Association of Government Employees v. Campbell,* 192 U.S.App.D.C. 369, 593 F.2d 1023 (1978), the defendant presented five witnesses who testified to the confidential nature of the documents at issue. In essence, they all agreed that *some* of the 62,000 reports *may* be confidential, but that *all* of them can *not* be so classified. Plaintiffs offered into evidence 33 documentary exhibits. These documents not only established their *prima facie* case but also, included evidence of a sample test performed on boycott reports submitted to the defendant during the week of October 7 to 15, 1976. The defendant contacted the seven firms which had submitted a total of 17 reports during this week; the test revealed that six firms, which together had submitted a total of sixteen reports, did *not* object to disclosure. Based on the documentary evidence, the testimony of the witnesses, and the facts stipulated to by the parties, the Court makes the following findings of fact:

1. On March 14, 1975, the plaintiffs requested, pursuant to 5 U.S.C. § 552 *et seq.,* "all records in the possession of the Department of Commerce which relate to any request, demand or other pressure exerted in an effort to obtain or deter cooperation in a restrictive trade or business practice relating to an international boycott." Plaintiffs' Exhibit 1.

2. On March 31, 1975, Rauer Meyer, Director of Export Administration, Department of Commerce (hereinafter "Commerce"), advised the plaintiffs that the information they sought was provided to Commerce by exporters, who are required to report boycott requests to the Department under § 4(b)(1) of the Export Administration Act of 1969, 50 U.S.C.App. § 2403(b)(1) (as amended). Plaintiffs' Exhibit 2. These reports are *commonly* referred to as "boycott reports."

3. A boycott report is a statement furnished to Commerce which reports a request for an action that has the effect of furthering or supporting a restrictive trade practice or boycott fostered by any foreign country against any country friendly to the United States. Generally, these reports contain the following information:

A) The name and address of the U.S. exporter submitting the report;

B) The date of the request;

C) The name of the country against which request is directed;

D) The country of the requestor;

E) The number of transactions to which restrictions were applicable;

F) The type of request received;

G) A general description of the types of commodities or technical data covered, and the total dollar value thereof (quantity, descriptions and price information);

H) A statement as to whether the United States exporter intends to comply with the request.

*See, e. g.,* exhibit 2 attached to Plaintiffs' Exhibit 12; Stipulation of Facts ¶ 20 (filed Feb. 8, 1979).

4. Defendant, relying on 5 U.S.C. § 552(b)(4), does not object to the disclosure of all the material contained in this report. It only objects to the disclosure of:

A) The name and address of the party making the request, and/or the name and address of the exporter *but only* where disclosure would reveal a customer or consignee of either the exporter or the submitter;

B) The quantity, description and value of the underlying commodity or technical data in its entirety, and

C) Any additional information contained on the form or attachments thereto to the extent that the additional information describes or reveals the transactional information of the nature described in 1 and 2 above. Commerce does not claim that any other information contained on the forms is confidential information within the meaning of exemption 4.

5. The information at issue is commercial or financial in nature.

6. It was obtained from a person.

■ 7. The defendant has failed to show by a preponderance of the evidence that disclosure of each piece of information will cause substantial harm to the competitive position of the person submitting the report. All of the witnesses conceded that some of the information was not genuinely confidential; it might be either out of date, or already known to competitors, or concern a proposed transaction which was never consummated. Publication of such information could not conceivably harm the competitive position of the submitter. Clearly, confidentiality varies from report to report, and even from item to item. The results of the test sample indicate that most submitters do not object to disclosure of the information at issue. Plaintiffs' Exhibits 17–33.

■ 8. Disclosure of the information at issue is not likely to impair the Government's ability to collect such information in the future. Because this data is not entirely confidential, disclosure will not deter individuals and firms from reporting it to the Government.

■ 9. Disclosure of some of this information may cause competitive harm, *e. g.,* Plaintiff's Exhibit 17, but on the present record, the Court cannot determine which data will cause such an effect. The only way to protect parties who have submitted confidential data is to provide them with appropriate notice of the impending disclosure.

## B. CONCLUSIONS OF LAW

In light of the foregoing, the Court makes the following conclusions of law:

1. The 62,000 boycott reports received by the defendant are not, in their entirety, confidential within the meaning of exemption 4, 5 U.S.C. § 552(b)(4).

2. The plaintiffs are entitled to disclosure of all the boycott reports, subject to the parties' compliance with the pre-disclosure conditions mandated by this Court.

3. In light of the evidence of the possibility of some confidential information being mixed in with the non-confidential documents, the Court, in the interest of justice and in the exercise of its general equity powers, must grant interested persons a right to object to the disclosure of particular reports.

4. Because the Court of Appeals has expressly stated that exemption 3, 5 U.S.C. § 552(b)(3), is not applicable to the documents in this case, the Court can no longer enforce its previous order. Accordingly, the Court's order of November 15, 1977, is vacated.