**BRAINTREE ELECTRIC LIGHT DEPARTMENT, Plaintiff,**

v.

**DEPARTMENT OF ENERGY, Defendant.**

**Civ. A. No. 79–2913.**

United States District Court, District of Columbia.

July 25, 1980.

⬤⬤⬤65

Thomas N. McHugh, Jr., Marta N. Manildi, Washington, D. C., for plaintiff.

Charles F. C. Ruff, U. S. Atty., Royce C. Lamberth, Jason D. Kogan, Asst. U. S. Attys., Washington, D. C., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CHARLES R. RICHEY, District Judge.

This case came on for a trial to the Court without a jury on July 21, 1980. Plaintiff, Braintree Electric Light Department ("BELD") brings this action under the Freedom of Information Act, 5 U.S.C. § 552; it seeks to examine documents relating to a Notice of Probable Violation ("NOPV") issued to one of its oil suppliers, C. K. Smith & Co., Inc. ("CKSCO"). The defendant Department of Energy ("DOE"), which currently holds the documents obtained from CKSCO, claims that this material is exempt from disclosure pursuant to 5 U.S.C. § 552(b)(4) ("exemption 4"). The Court is persuaded that the bulk of these documents are in fact confidential commercial information, and thus, it shall not order their release. Yet, because selected portions are not confidential, the Court shall enter judgment for plaintiff with respect to

certain specified items of information. The Court, however, shall not award attorney's fees to plaintiff because it finds that plaintiff has failed to satisfy 5 U.S.C. § 552(a)(4)(E).

The following opinion shall constitute the Court's findings of fact and conclusions of law in accordance with Fed.R.Civ.P. 52(a).

## I. BACKGROUND.

Plaintiff BELD is a municipally owned electric system providing electric service to Braintree, Massachusetts. CKSCO is a wholesaler of Nos. 2 & 6 fuel oil serving Rhode Island and the eastern portion of the Commonwealth of Massachusetts. It supplied oil to BELD in 1973 and 1974 and, in 1978, it was the subject of an NOPV proceeding instituted by the DOE. BELD seeks to examine approximately twenty-three documents which the DOE gathered during its work on that proceeding and which the DOE has refused to disclose. The DOE contends that all of these documents contain confidential commercial information.

■■ Exemption 4 protects from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). It is well established that information may fall within this exemption if it satisfies three criteria: it must be "(1) commercial or financial, (2) obtained from a person outside the government, and (3) privileged or confidential." *Gulf & Western Industries, Inc. v. United States*, 615 F.2d 527, 529 (D.C.Cir.1979). In this case, the first two criteria have clearly been satisfied and thus, the sole issue for the Court is the confidentiality of the withheld documents. In *Gulf & Western Industries, Inc. v. United States*, 615 F.2d 527, 530 (D.C.Cir. 1979), the court explained that data would be confidential if it "is not the type usually released to the public and is of the type that, if released to the public, would cause substantial harm to the competitive position of the person from whom the information was obtained." Finally, the burden of proof rests upon the DOE to show, by the preponderance of the evidence, that the withheld data is indeed confidential. *Green*

*v. Department of Commerce*, 468 F.Supp. 691, 692 (D.D.C.1979), *app. dismissed*, 618 F.2d 836 (D.C.Cir.1980).

## II. ALL WITHHELD DATA, EXCEPT CUSTOMER NAMES, IS CONFIDENTIAL COMMERCIAL INFORMATION.

■■ The withheld information consists of a variety of documents pertaining to CKSCO's selling prices, inventory balances, thruput charges, profit margins, purchase activity, freight charges, costs of goods sold, and customer names. The Court finds that the DOE has satisfied its burden of persuasion with respect to all of this data, except customer names.

Mr. Frank W. Mills, sales manager for Nos. 2 & 6 fuel oil with CKSCO, testified persuasively about the company's business practices and the practices of its competitors. First, Mr. Mills explained that all of the information sought by plaintiff would not be disclosed to the public or to customers of the company. Indeed, his testimony showed that CKSCO takes steps to prevent dissemination of the information at issue. Mr. Mills stated that only top level employees—CKSCO has three—have access to the data, and that these employees are not permitted to disclose this information to competitors. In addition, he noted that, within the industry, executives who possess this data rarely leave one company for employment with a competitor. In light of Mr. Mills' testimony, the Court finds that the information sought by plaintiff is not the type which CKSCO usually releases to the public.

The Court is also persuaded that, with the exception of customer names, release of this data would cause substantial competitive harm to CKSCO. Mr. Mills testified that, at present, the oil wholesale market in Rhode Island and eastern Massachusetts is extremely competitive. Wholesalers compete aggressively for both municipal buyers and prestigious buyers in private industry. Municipalities often purchase their oil supplies through a bidding process; wholesalers, of course, would like to make a bid which undercuts the competition by the smallest margin possible. Private industry

accounts vary in desirability according to the promptness with which they honor their bills. Mr. Mills explained that a large account which paid its bills within ten days was far more preferable for a wholesaler than an account which delayed sixty days before paying. Thus, the Court finds that wholesalers are in active competition for accounts.

Mr. Mills explained that, in this competitive process, information concerning the activities of other wholesalers is useful. If one wholesaler is able to discern the financial condition of a competitor, it can then underbid that competitor. Here, all information concerning a competitor's pricing mechanism becomes helpful. Freight charges and thruput charges enable a wholesaler to determine another's cost of doing business. Knowledge of the costs of goods sold and the purchase agreements entered into are also vital information. With purchase information, a competitor may even seek out a supplier and attempt to deprive one company of its source of oil. In addition, information concerning inventory balances would enable a competitor to learn a company's capacity for expansion and cost of overhead. Finally, a competitor's margin is the most vital piece of information available; with this knowledge, a competitor may successfully bid below the company's margin, thereby eliminating its profit. As a whole, this commercial data offers competitors of CKSCO a means of procuring a clear understanding of the company's business practices. With all of this information, a competitor could readily underbid CKSCO and harm its competitive standing. Moreover, release of separate pieces of this financial puzzle would enable competitors, who may somehow have gathered other pieces, to complete the picture. Accordingly, the Court finds that this information, if released to the public, would cause substantial harm to the competitive position of CKSCO, the person who submitted the information to the government.

The court notes an additional reason for withholding CKSCO's selling prices. These prices vary from customer to customer and if one client learned that another was purchasing the same product for less, it might try to negotiate the price downward or decide to leave CKSCO for another wholesaler. This loss of business would certainly cause substantial harm to CKSCO's competitive position.

The Court declines to make such a finding with respect to the customer needs which may be contained in documents 5a–5g and 6–6a. Although Mr. Mills stated that CKSCO refuses to release the names of its customers to the public, he did not provide a cogent reason for this policy. Mr. Thomas McHugh, an expert who testified on plaintiff's behalf, explained that customer data can hardly be considered confidential. First, trucks bearing the CKSCO logos would be highly visible when making deliveries; anyone interested in learning the identity of CKSCO's customers need only follow these trucks. Additionally the normal policy underlying the secrecy of customer names has little relevance in the oil market. Generally, customer names represent the fruit of a business's search of the entire market; release of this data would enable a competitor to sell its product to known customers without incurring the cost of advertising throughout the entire market. Absent this added cost, it might well offer its goods at a lower price, thereby depriving the original seller and advertiser, of its customers. The Court, however, has been presented with no evidence that this general rule has any relevance to the oil wholesaling industry. Because purchasers of oil are evidently well known, wholesalers do not incur costs in seeking them out. Thus, knowledge of competitors' customers is not likely to enable a company to learn of new accounts without experiencing the costs incurred by the competitor. Accordingly, the Court finds that the customer names withheld from plaintiff are not the type of information, which, if released, would cause substantial harm to CKSCO's competitive position.

Finally, the Court addresses two contentions raised by plaintiff, First, plaintiff argues that the requested data is so out-of-date as to have no relevance in the current oil market. Second, plaintiff submits that whatever relevance the information does possess is solely the result of CKSCO's own

statements in Court. Thus, plaintiff claims that CKSCO should not be permitted to render the information "confidential" within the meaning of exemption 4 by revealing its competitive value. The Court is not persuaded by either contention.

Mr. Frank Mills explained that although the oil market had changed in the last several years, the 1980 market was similar to that of 1973 and 1974, the years in which the requested information was prepared. Moreover, CKSCO had been able to maintain a steady source of supply and a constant number of suppliers. Thus, Mr. Mills explained, the six-year old data would have a great relevance to a competitor today. By adjusting the old figures for cost-of-living and, interest increases, a competitor could produce data very similar to CKSCO's 1980 figures. In light of the relative ease with which competitors could update CKSCO's 1973 and 1974 information, the Court is persuaded that this data retains its importance in the 1980 market.

■ Additionally, the Court finds that CKSCO cannot be faulted for providing an explanation of the relevance of the 1973 data. A business which seeks to protect proprietary information, or data which may lead to such information, is often in a difficult position. By explaining how competitors may use the still unrevealed information, a business runs the risk that it will provide its competitors with insights which they would not otherwise possess. Thus, if the information were released, competitors, who would have had no ability to use the data, would be able to take advantage of the information, through explanations offered in court. Alternatively, if the business declines to provide any explanation, a trial court will be unable to assess the value of the data; thus, the data could be released and the business will run the risk of its competitors understanding how to use it. In light of the difficult position in which businesses are placed when their commercial data becomes the subject of legal inquiry, the Court is loathe to impose upon them the harsh standard proposed by plaintiff. If a business is able to explain how a competitor might make use of the data, the Court should not inquire into the obscure issue of a competitor's ability to independently develop the significance which has been explained in Court. Plaintiff's position is especially harsh in this case. One of the key issues in any exemption 4 case is the current significance of the commercial data. By stating that its business has changed little since 1973, CKSCO has merely explained that the withheld data is neither stale nor outdated. Such testimony is vital to the resolution of the issues in this case. Accordingly, the Court declines to adopt plaintiff's suggestion that CKSCO's explanation be overlooked.

## III. PLAINTIFF IS NOT ENTITLED TO ATTORNEY'S FEES.

■ Under 5 U.S.C. § 552(a)(4)(E), the Court may award attorney's fees to a FOIA complainant who has "substantially prevailed." The Court does not believe that BELD has satisfied this standard. Although the Court has compelled the production of customer's names, this data is an extremely small portion of the withheld information. Only a handful of the twenty-three disputed documents contain such data and, with respect to these documents, the names are only one portion of the withheld record. In light of the minimal significance of the compelled disclosure, the Court finds that plaintiff has not substantially prevailed in this action.

## IV. CONCLUSION.

In light of the foregoing, the Court makes the following conclusions of law.

First, the information on suppliers, purchases, costs of goods sold, inventory balances, thruput costs, selling prices, freight costs, and margin, contained in documents 1 through 23 is confidential commercial information within the meaning of 5 U.S.C. § 552(b)(4).

Second, the customer names contained in documents 5a–5g and 6–6a is not protected by 5 U.S.C. § 552(b)(4) and must be disclosed pursuant to 5 U.S.C. § 552(a)(3).

Third, plaintiff is not entitled to attorney's fees under 5 U.S.C. § 552(a)(4)(E).

An order in accordance with the foregoing shall be issued of even date herewith.