**BURKE ENERGY CORPORATION, Plaintiff,**

v.

**DEPARTMENT OF ENERGY FOR the UNITED STATES OF AMERICA, Defendant.**

**No. 83–1824.**

United States District Court, D. Kansas.

April 3, 1984.

---

508

James Craig Dodd, Enid, Okl., for plaintiff.

Don W. Crockett, U.S. Dept. of Energy, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

KELLY, District Judge.

Having been fully briefed and argued on March 21, 1984, the Court makes the following findings of fact and conclusions of law consistent with the findings announced at the hearing on that date.

This is an action by plaintiff Burke Energy Corporation against the Department of Energy (DOE) of the United States under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. The plaintiff prayed the Court to enjoin the United States from withholding certain documents and to order the disclosure of these documents. The matter is before the Court on defendant's motion for summary judgment and plaintiff's cross-motion for summary judgment and motion for *in camera* inspection.

The issue in this case is whether, under the FOIA, Burke Energy Corporation is entitled to the disclosure of documents relating to the DOE's audit of Inexco Oil Co. and to the settlement and consent order resulting from the audit. The DOE claims that the information it has withheld is subject to two exemptions: the § 552(b)(4) exemption for trade secrets and commercial or financial information, and the § 552(b)(5) exemption for governmental inter-agency and intra-agency memoranda and letters.

This controversy relates only to nine documents that were withheld in part, and to 14 documents withheld entirely. To date, the DOE has released a total of 62 entire documents.

On May 10, 1982, Burke Energy Corporation made a FOIA request to the DOE's Kansas City office for all documents relating to the DOE's audit of Inexco Oil Co.

On May 25, 1982, the Economic Regulatory Administration (ERA) in Kansas City wrote Burke Energy Corporation a letter acknowledging Burke's request for the Inexco documents.

On July 9, 1982, the ERA responded by letter to Burke indicating that 35 documents had been identified as responsive to Burke's request, 15 of the documents were released in whole or in part, and that the remaining documents were entirely withheld under the § 552(b)(4) FOIA exemptions for trade secrets and commercial or financial information and under the § 552(b)(5) exemption for inter-agency or intra-agency memoranda or letters.

On August 17, 1982, Burke filed an appeal with the DOE's Office of Hearings and Appeals (OHA).

On September 13, 1982, the OHA remanded the matter to the ERA in Kansas City, ordering it to either release the documents withheld from Burke or to issue a new denial letter to justify the exemptions.

On September 8, 1983, Burke filed this suit in district court seeking the disclosure of the documents that were withheld because the ERA office in Kansas City had failed to act in any way in accordance with the OHA remand.

On November 7, 1983, the ERA responded to the Remand Order of the OHA by releasing 62 documents in their entirety, releasing parts of nine documents, and withholding 14 entire documents. The ERA further complied with the OHA's order by providing a full description of the documents and by providing justifications for withholding each document.

The specific documents at issue in this case are set forth in the *"Vaughn* Index," prepared by a Senior Staff Attorney in the Regulatory Litigation Division of the DOE, who reviewed each and every requested document to see whether it was eligible for disclosure. The attorney filed with the Court on March 16, 1984, an Affidavit attesting to the accuracy of the Index. The *Vaughn* Index contains a description of the contents of each document, a description of the type of information withheld, the exemption claimed as the basis for withholding the information, and the reason that the omitted information is subject to the exemption. The concept of a *Vaughn* Index derives from the procedure explained in *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir. 1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

The standard of district court review in all FOIA cases is set forth in 5 U.S.C. § 552(a)(4)(B), which provides that the district court has *de novo* review, the court may examine records *in camera* to determine whether they are exempt, and the government agency has the burden of proving that an exemption is applicable.

■ The DOE contends that two exemptions to the FOIA are applicable in this case. The Court first considers the § 552(b)(4) exemption for trade secrets and commercial or financial information. This provision exempts from disclosure matters that are "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4).

The purpose of the (b)(4) exemption is to protect the confidentiality of information which citizens provide to their government, but which would customarily not be released to the public, and to facilitate citizens' ability to confide in their government. *Sterling Drug, Inc. v. Federal Trade Commission,* 450 F.2d 698, 709 (D.C.Cir.1971).

■ The elements of a (b)(4) exemption are (a) the information must be financial or commercial in nature, (b) the information must be obtained from a person outside the government structure, and (c) the information must be confidential or

privileged. Information is "confidential" if its disclosure is likely (i) to impair the government's ability to obtain necessary information in the future, or (ii) to cause substantial harm to the competitive position of the person from whom the information was obtained. *Green v. Dept. of Commerce*, 468 F.Supp. 691, 692 (D.D.C.1979), *appeal dismissed*, 618 F.2d 836 (D.C.Cir. 1980). Further, other courts have held that the test for whether information is "confidential" is whether the information is of the type that would not customarily be released to the public by the person from whom it was obtained. *Sterling Drug, Inc. v. Federal Trade Commission*, 450 F.2d 698, 709 (D.C.Cir.1971); *National Parks and Conservation Association v. Morton*, 351 F.Supp. 404, 406 (D.D.C.1972), *aff'd sub nom. National Parks and Conservation Association v. Kleppe*, 547 F.2d 673, 687 (D.C.Cir.1976). Finally, to support a finding of confidential information, there must be independent evidence to support it, such as evidence that disclosure will likely result in harm to the person's competitive position; a blanket allegation of harm does not alone constitute sufficient evidence. *Indian Law Resource Center v. Department of Interior*, 477 F.Supp. 144, 147 (D.D.C.1979).

The application of the (b)(4) exemption is to be narrowly construed. The kinds of information that other courts have held to be within the exemption include the following: sales and profit data, breakdowns of sales, market share data, and confidential bid amounts, *Sterling Drug, Inc. v. Federal Trade Commission*, 450 F.2d 698, 709 (D.C.Cir.1971); business sales statistics including total net sales, total costs and expenses, operating costs, gross sales, and renegotiable sales, *Fisher v. Renegotiation Board*, 355 F.Supp. 1171, 1174 (D.D.C.1973); legal memorandum prepared by attorney for commercially-owned utility for use to determine whether to bring suit against contractor, *Miller, Anderson, Nash, Yerke & Wiener v. Department of Energy*, 499 F.Supp. 767 (D.Or.1980); results of audits of books, including sales statistics, inventories, holdings, expenses,

statement of profits and gross receipts, securities, liabilities, and employee salaries and bonuses, *National Parks and Conservation Association v. Morton*, 351 F.Supp. 404, 405–06 (D.D.C.1972), *aff'd in part, rev'd in part on other grounds sub nom., National Parks and Conservation Association v. Kleppe*, 547 F.2d 673 (D.C.Cir. 1976).

The type of information that the DOE has exempted under the (b)(4) exemption in the instant case parallels the types of information that courts in the above cases have held to be exempt. As described in the *Vaughn* Index, the information that the DOE claims to be exempt includes the following:

Documents 1 and 4 contain audit results, conclusions, and recommendations, including data concerning nonproduct costs, contractual pricing provisions, overcharge computations, quantity and base price of product obtained from a particular plant.

Document 2 contains financial exhibits showing investments, estimated reserves, liquid values, gas values, plant revenues, operating costs, profits (or losses), and plant returns.

Document 3 is a proposed remedial order and the deleted portions include a ceiling price determination, prices for different categories of crude oil, customer names, bonus prices, and overcharge amounts.

Document 6 contains information about pricing and product conversion factors.

Document 7 contains shrinkage computations and a substitute selling price.

Document 8 contains gasoline mix and computed per gallon base price for butane.

Document 9 contains base prices.

Document 16 contains a customer name, reference prices and parties involved in determining most comparable outlet in same geographic market on the sales date.

Document 19 contains information regarding the method of pricing and cost increases.

Document 20 contains base price data including month, seller, and prices for various products.

Document 21 contains base period selling prices.

Document 23 contains audit work papers relating to Inexco's operations including computation of shrinkage costs, conversion factors, nonproduct costs, sales data, recoveries with respect to propane and butane/natural gas mixture, overcharges, contract information, sales information, and a wide variety of related information.

The Court finds that the information deleted from Document Nos. 1 through 9 and the entire content of Document Nos. 10 through 23 are confidential because the deleted sections and documents contain information that is clearly the type of information a corporation would not customarily release to the public. Also, the DOE alleges in its *Vaughn* Index—and the Court agrees—that the release of this information would very likely cause substantial harm to the competitive position of Inexco. The kind of substantial competitive harm that is likely to result is that the disclosure would permit competitors to acquire private information about Inexco's pricing policies; would enable competitors to gain otherwise confidential information about Inexco's financial situation; would enable competitors to solicit Inexco's customers with competitive arrangements; and would without question adversely affect Inexco in many ways.

The Court does not make this finding that the information is confidential based solely on the blanket allegation of the DOE. The Court has closely reviewed the thorough and comprehensive *Vaughn* Index and agrees that the omitted information should be exempt under (b)(4). The DOE's previous disclosure of a total of 62 documents and partial disclosure of an additional nine documents clearly indicates to the Court that the DOE has conscientiously reviewed the documents, has segregated exempt from nonexempt information, has permitted the release of nonexempt documents, and now seeks to protect the remaining documents that are of a confidential commercial nature with respect to Inexco's business dealings.

Burke's argument that it is not a competitor of Inexco, but rather stands in the noncompetitive relationship of supplier-buyer, is totally without merit. The issue is whether the public disclosure of the information would likely cause competitive harm to Inexco, regardless of the source of the harm. The Court finds that the release of the exempted information would cause harm to Inexco's business relations with respect to Inexco's dealings with other entities as well as with Burke.

The Court finds that the information that was deleted from the requested documents under a claim of the (b)(4) exemption (i) is commercial or financial in nature, (ii) was obtained from Inexco, a person outside the government structure, and (iii) is confidential information. Therefore, the Court finds that the DOE properly withheld the information claimed to be exempt under the (b)(4) exemption.

■ The DOE also contends that some of the withheld information is exempt under the (b)(5) exemption that protects governmental inter-office or intra-office memoranda and letters. This section exempts from disclosure matters that are "interagency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The purpose of the (b)(5) exemption is to ensure that federal agencies enjoy the free flow of ideas essential to the making of reasoned opinions. *Sterling Drug, Inc. v. Federal Trade Commission*, 450 F.2d 698, 706 (D.D.C.1971). Federal agency operations would be detrimentally affected if the agency were required to disclose documents and information which it received, generated, or considered before issuing an order, decision, or regulation. Congress enacted the exemption in response to agency personnel who testified in congressional committees that advice from staff assistants and the exchange of ideas among agency personnel would not be

frank and honest if they were forced to "operate in a fishbowl." H.R.Rep. No. 1497, 89th Cong., 2d Sess. 10, *reprinted in* 1966 U.S.Code Cong. & Ad.News 2427.

The (b)(5) exemption protects the privileges that the government customarily enjoys in its litigations against having to reveal "those internal working papers in which opinions are expressed and policies formulated and recommended." *Ackerly v. Ley,* 420 F.2d 1336, 1341 (D.C.Cir.1969). *See also Environmental Protection Agency v. Mink,* 410 U.S. 73, 87, 93 S.Ct. 827, 836, 35 L.Ed.2d 119 (1973) (protects intra-agency advisory opinions). This exemption incorporates the privileges available to a governmental agency in civil litigation, notably the deliberative process privilege (sometimes called the executive privilege), the attorney-client privilege, and the attorney work-product privilege. *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149, 95 S.Ct. 1504, 1515, 44 L.Ed.2d 29 (1975).

The DOE in the instant case asserts that the ground for the (b)(5) exemption is the government's deliberative process privilege. This privilege protects from disclosure recommendations, draft documents, proposals, suggestions, and other subjective documents that reflect the personal opinions of the writer rather than the policy of the agency. *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 866 (D.C.Cir.1980). The factors that should be considered to determine whether a document is protected by the deliberative process privilege include: (a) whether the document is "predecisional" (i.e., whether it was generated before the adoption of an agency policy); (b) whether the document is "deliberative" (i.e., whether it reflects the give-and-take of consultative process); (c) whether the document is so candid or personal in nature that public disclosure would stifle honest and frank communication in the future; and (d) whether the

document is recommendatory in nature or is a draft of what will become a final document. *Id.* Documents that are nonfinal drafts, by their very nature, are typically predecisional and deliberative materials because they reflect a tentative view and are subject to later revision. *Exxon Corp. v. Department of Energy,* 585 F.Supp. 690 (D.D.C.1983). *See Coastal States Gas Corp. v. Department of Energy,* 617 F.2d at 866. Nevertheless, material within any of these documents that is purely factual in nature is not exempt; only material that relates to opinion, policy, theory, or recommendations is exempt. Purely factual material must be segregated from exempt material and must be disclosed to the extent it is possible to do so without compromising the private remainder of the document. *Environmental Protection Agency v. Mink,* 410 U.S. 73, 91, 93 S.Ct. 827, 838, 35 L.Ed.2d 119 (1973).

The type of information that the DOE has claimed to be exempt by virtue of the government's deliberative process privilege is primarily drafts of the consent order;[1] a draft of the remedial order;[2] drafts of the audit report;[3] the results, conclusions, and recommendations of the final audit report;[4] and intra-agency memoranda or letters.[5]

The Court finds that the documents which are various drafts of consent orders and the remedial order are exempt. As discussed above, drafts represent the tentative position of agency personnel and are subject to revision. The letters and memoranda, also, are exempt as intra-agency communications entitled to protection because of their advisory and recommendatory nature. Finally, the results, recommendations, and conclusions of the audit are exempt by virtue of the deliberative process privilege. The audit report was not the agency's final decision or action taken with respect to Inexco, but was part of the

1. Document Nos. 11, 12, 13, 14, 15 and 22.

2. Document No. 3.

3. Document Nos. 17 and 18.

4. Document Nos. 1, 4 and 19.

5. Document Nos. 3, 5, 10 and 14.

process leading to the final Consent Order. *See generally Coastal States Gas Corp. v. Department of Energy, supra,* at 868. In summation, the Court finds that the documents or parts thereof that the DOE withheld under the (b)(5) exemption are indeed protected from disclosure by this provision.

Further, the Court finds that the non-exempt and factual material has been segregated from the exempt and advisory material. The government attorney's Affidavit and the *Vaughn* Index attached thereto fully describe the kinds of information claimed to be exempt and nonexempt. The Court finds no reason to question the accuracy or veracity of the Affidavit and the *Vaughn* Index. The Court, therefore, relies on the affidavit and index and agrees with the DOE allegation that the release of the withheld documents would discourage the exchange of ideas and information within the agency, impair agency decision-making, and inhibit the full and frank discussion of legal or policy matters within the agency.

Therefore, the Court finds that the documents that the DOE has withheld are exempt from disclosure under the (b)(4) and (b)(5) exemptions. The DOE's motion for summary judgment is granted.

■ Burke Energy Corporation's cross-motion for summary judgment is primarily based on Burke's allegations of bad faith on the part of the government. The Court notes first that as of the date of the arguments for summary judgment, the government had filed an Affidavit verifying the accuracy of the *Vaughn* Index prepared for this case. This filing thus disposes of Burke's complaint about the absence of the Affidavit. Second, the government's actions may be described as dilatory. Nevertheless, there are insufficient facts in this case to equate delay with bad faith. Finally, the delay in this case was not sufficiently significant to permit the extreme remedy of summary judgment in favor of the plaintiff. Further, the Court disagrees with Burke's allegation that the withheld information is "stale" and should be disclosed. The withheld information is dated from 1975 through 1981, and most of the documents are dated 1980 and 1981. The documents are of relatively recent vintage with respect to the likely competitive harm to Inexco that would result upon their disclosure. For purposes of this exemption, therefore, the Court finds that this information is not stale. Nor is the Court persuaded by any of the other arguments raised by plaintiff in its motion for summary judgment. Therefore, the Court overrules plaintiff's motion for summary judgment.

■ Finally, Burke Energy Corporation also moved the Court to make an *in camera* inspection of the withheld documents. An *in camera* inspection is discretionary with the district court. *DiViaio v. Kelley,* 571 F.2d 538 (10th Cir.1979); 5 U.S.C. § 552(a)(4)(B). The Court has found that the Affidavit and *Vaughn* Index are sufficient to show that the documents were properly withheld. Therefore, the plaintiff's Motion for *In Camera* Inspection is overruled.

IT IS, THEREFORE, ORDERED this 3 day of April, 1984, that the DOE's motion for summary judgment be granted, and Burke Energy Corporation's motions for summary judgment and *in camera* inspection be overruled.