**MERIT ENERGY COMPANY, a Delaware corporation, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF THE INTERIOR and the Minerals Management Service, Defendants.**

**No. 00–WY–1071–CB.**

United States District Court, D. Colorado.

March 30, 2001.

Craig R. Carver, Alfers & Carver, LLC, Denver, CO, for Plaintiff.

William G. Pharo, United States Attorney's Office, Denver, CO, for Defendants.

## ORDER ON SUMMARY JUDGMENT

BRIMMER, District Judge.

This matter comes before the Court on Defendants' Motion for Summary Judgment. After considering the motion, hearing oral argument, and being fully advised

of the premises, this Court **FINDS** and **ORDERS** as follows:

### Background

This case was brought by Plaintiff to compel disclosure of certain documents pursuant to a request under the Freedom of Information Act ("FOIA"). 5 U.S.C. § 552. Specifically, Merit wants access to documentation from the Minerals Management Service ("MMS"), an agency of the United States Department of Interior ("DOI") relating to the computation of royalties assessed on production of oil and gas on the Jicarilla Apache Tribal Reservation ("Reservation") in northern New Mexico. MMS manages oil and gas assets on the Reservation as part of its trust responsibilities to the Jicarilla Apache Tribe (the "Tribe"). MMS shares these management duties with tribal representatives as part of a cooperative agreement between MMS and the Tribe under the Federal Oil and Gas Royalty Management Act ("FOGRAMA"), 30 U.S.C. § 1732. Between 1993 and 1995, Merit purchased a working interest in oil and gas production on the Reservation. The documents Merit seeks relate to the determination by MMS of the major portion price, a baseline by which the royalty payments of lessees are calculated. Specifically, Merit requested:

(a) the entire case file concerning an "Order to Perform" issued to Merit by MMS on February 16, 1999; (b) all documents consulted or utilized by MMS in determining so-called "major portion" prices for areas covered by the Jicarilla Apache Tribal Reservation for the period of January 1, 1993 through October 31, 1995; (c) any written administrative guidance for establishment of "major portion" prices for production obtained from the area and during the time period referenced above; (d) the entire administrative record maintained by the MMS with regard to a "Notice of Noncompliance" issued by MMS to Merit on August 19, 1999; and (e) all correspondence between the MMS and any representatives of the Jicarilla Apache Tribe regarding an audit of Merit Energy Company royalty payments, the above-referenced Order and Notice, or the determination of "major portion" prices for the above-referenced periods.

(Pl.'s Compl. ¶ 7 at 2–3.)

Merit seeks the information for use in a parallel action before the Department of Interior's Office of Hearings and Appeals challenging the validity of the major portion price determination. Merit contends DOI, MMS and the Tribe have conspired in bad faith to manipulate the major price determination, thereby increasing royalty revenues on the reservation.

MMS initially failed to meet its own deadline for processing of FOIA requests, citing a large number of such requests. Merit succeeded on appeal to the Department of Interior's FOIA appeals officer to force agency action, and both DOI and MMS supplied Merit with over 3900 pages of documents, 16 computer diskettes and 151 pages of responsive records, all relating to computation of "major portion" prices.

■ Merit contends that the FOIA production was inadequate, however, because of the redaction of pricing data and methodology information from approximately 2800 pages of the documents, and the withholding of another twelve documents in their entirety. DOI and MMS maintain that the redacted information falls under Exemptions Four and Five of FOIA. In support of their position, Defendants have submitted a "coded index" of sample pages that were withheld or redacted.[1] The re-

---

1. To invoke an exception to compel disclosure under FOIA, an agency must "provide enough information, presented with sufficient detail, clarity, and verification, so that the requester

dacted portions are marked to indicate which FOIA exception Defendants consider applicable.

DOI and MMS move for summary judgment, arguing the disputed materials are not subject to release as a matter of law. In support, Defendants submit the statements of Laura Summerton, FOIA officer for the MMS Royalty Management program, and David Wong, executive director of the Department of Taxation and Revenue for the Tribe.[2]

### Standard of Review

Summary judgment is appropriate where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue that party must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *Ford v. West*, 222 F.3d 767, 774 (10th Cir.2000) (quotes and citations omitted). There must be sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ An agency decision to withhold information requested under FOIA is reviewed *de novo*. *Anderson v. Dep't of Health and Human Serv.*, 907 F.2d 936, 941 (10th Cir.1990). "The district court must determine whether all of the requested materials fall within an exemption to the FOIA and may not simply conclude that an entire file or body of information is protected without consideration of the component parts." *Id.* District courts have wide latitude in how they evaluate agency decisions to withhold disputed documents, including "indexing, oral testimony, detailed affidavits, or alternative procedures." *Id.* To give effect to the purposes of FOIA, exceptions under the act are to be construed narrowly. *Id.* at 943.

### Analysis

DOI and MMS claim the withheld materials fall under either of two exceptions to the Freedom of Information Act. The protection of private commercial or financial information embodied in Exemption 4 of FOIA is alleged by Defendants to apply to most of the withheld materials, with the rest excluded from production under the deliberative process privilege of Exemption 5. The Court will consider the pertinence of the two exceptions in turn.

### ● Exemption 4

By its terms, the production requirements of the Freedom of Information Act do not apply to information that is "(a) commercial or financial, (b) obtained from a person, and (c) privileged or confidential." *Anderson*, 907 F.2d at 944; *see also* 5 U.S.C. § 552(b)(4). Plaintiff disputes assertions by DOI and MMS that the materi-

---

can fairly determine what has not been produced and why, and the court can decide whether the exemptions claimed justify the nondisclosure." *Fiduccia v. United States Dep't. of Justice*, 185 F.3d 1035, 1043 (9th Cir.1999). The Court has serious reservations as to whether the selectively chosen documents which make up the "coded index" satisfy these criteria.

2. In its opposition to summary judgment, Plaintiff pointed out Mr. Wong's declaration was not offered as a sworn affidavit as required under Rule 56. Defendants subsequently resubmitted a copy of Mr. Wong's declaration as a signed and sworn document. The Court has granted Plaintiff's motion to submit, and will consider the Wong declaration to be in compliance with Rule 56 for the purposes of this Order.

als withheld under Exemption 4 meet each of these criteria.

Despite Plaintiff's objections, the Court believes the contested materials clearly meet the first requirement. Information regarding oil and gas leases, prices, quantities and reserves is obviously commercial in character. For the purposes of FOIA, characterizing information as "commercial" or "financial" does not require the invocation of a shibboleth—the words should be given their ordinary meanings. *Pub. Citizen Health Research Group v. Food and Drug Admin.*, 704 F.2d 1280, 1290 (D.C.Cir.1983).

Likewise, the materials plainly meet requirement (b): that they be acquired from a "person." As defined in FOIA, person "includes an individual, partnership, corporation, association, or public or private organization other than an agency." 5 U.S.C. § 551(2). Even where the compilation of information is directed by a government agency, it is still from a "person" to the extent it is obtained from an entity outside the government. *Gulf & Western Indus., Inc. v. U.S.*, 615 F.2d 527, 530 (D.C.Cir.1980).

The question of whether the withheld materials are confidential is a much harder question.[3] Determination of a document's status as privileged or confidential "is to be made solely by applying the express exemption for trade secrets and confidential commercial or financial information found in the exemption itself" and cannot be expanded by reference to other sources. *Anderson*, 907 F.2d at 945. The confidentiality inquiry treats information differently depending on whether its production is compelled or it is provided to the agency voluntarily.

If information is required to be produced to a government agency, it falls under Exemption 4 as confidential if its disclosure would either (1) impair the ability of the Government to obtain information in the future or (2) disclosure is likely to cause substantial harm to the competitive position of the party from whom it was obtained. *Nat'l Parks and Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C.Cir.1974). Information voluntarily disclosed to an agency is deemed confidential "if it is of a kind that would customarily not be released to the public by the person from whom it was obtained." *Bartholdi Cable Co., Inc. v. Fed. Communications Comm'n*, 114 F.3d 274, 281 (D.C.Cir. 1997) (quoting *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 879 (D.C.Cir.1992)).

DOI and MMS contends the withheld materials satisfy both the *Morton* and *Bartholdi Cable* standards of confidentiality.[4] Release of the information would impair the ability of the Tribe to negotiate oil and gas leases, according to Defendants, and as a result would make the Tribe more reluctant to reveal this information to DOI and MMS in the future, meeting both prongs of the *Morton* standard. (Declaration of David Wong, ¶ 13.) Further, to the extent Tribal records are barred from release to the public under the Tribal Code (Jicarilla Apache Tribal Code § 19–3–1), Defendants argue they are "of a kind that would customarily not be released." *Bartholdi Cable, supra.*

However, Defendants' arguments on both of these standards require as their starting point the notion that the information is Tribal in origin. The duty to collect information related to royalty payments on

---

3. Defendants do not contend the Exemption 4 information is subject to any privilege.

4. The Court considers it noteworthy that Defendants never definitively state whether the information was required to be produced or was produced voluntarily.

federal lands and Indian reservations lies in the first instance with Department of the Interior's Associate Director of Royalty Management. 30 C.F.R. § 201.100 (2001). In this case the Tribe assumed certain duties related to the administration of oil and gas royalties pursuant to the cooperative agreement entered into with MMS. Such cooperative agreements under FOGRAMA allow tribes "to share oil or gas royalty management information, [and] to carry out inspection, auditing, investigation or enforcement ... activities under this chapter in cooperation with the Secretary." 30 U.S.C. § 1732(a). Under a cooperative agreement, "each Indian tribe shall, upon request, have access to all royalty accounting information in the possession of the Secretary respecting the production, removal, or sale of oil or gas from leases on Indian lands under the jurisdiction of such tribe." 30 U.S.C. § 1732(b)(2). Absent a cooperative agreement, DOI and MMS would still be obligated to compile the contested royalty management materials in the course of its trust obligations to administer oil and gas resources on the Reservation. 30 C.F.R. § 201.100, *supra.*

This seriously undercuts not only Defendants' contention that the withheld information is confidential, but that the information ever "belonged" to the Tribe. Once the Interior Secretary enters into a cooperative agreement, FOGRAMA grants tribes broad access to data regarding royalties, including "[t]rade secrets, proprietary and other confidential information." 30 U.S.C. § 1733(a). Nonetheless, FOGRAMA does not entitle the Tribe to claim as confidential or proprietary materials accumulated by the Tribe that would otherwise be submitted by lessees directly to the agency. "In order for the Secretary, the States and Indian tribes to assist one another in the common goal of an effective and efficient royalty management system, States and Indian tribes must share information with the Secretary both

fully and in a timely manner." H.R.Rep. No. 97–859, at 37 (1982), *reprinted in* 1982 U.S.C.C.A.N. 4268, 4291.

In creating cooperative agreements and making this information available to tribes, Congress did not abrogate FOIA. To the contrary, when tribes acquire royalty information in the course of a cooperative agreement, FOGRAMA binds them to the same FOIA disclosure requirements as federal agencies:

Whenever any individual, State, or Indian tribe has obtained possession of information pursuant to a cooperative agreement authorized by this section ... the individual shall be subject to the same provisions of law with respect to the disclosure of such information as would apply to an officer or employee of the United States or of any department or agency thereof and the State or Indian tribe shall be subject to the same provisions of law with respect to the disclosure of such information as would apply to the United States or any department or agency thereof.

30 U.S.C. § 1733(c).

It is possible the oil and gas lessees on the Reservation are able to invoke Exemption 4 to prevent the release of royalty information; the Tribe can not. Defendants have failed to demonstrate as a matter of law that the documents withheld constitute commercial or financial information obtained from a person that is privileged or confidential, as required in order to apply Exemption 4 of FOIA. *Anderson, supra.*

● **Exemption 5**

■ Exemption 5 of the Freedom of Information Act protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5

U.S.C. § 552(b)(5). This provision exists to foster healthy decisionmaking processes in government agencies. "Deliberative material reflects the give-and-take of the consultative process, by revealing the manner in which the agency evaluates possible alternative policies or outcomes. Thus, the deliberative process exemption protects recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *City of Virginia Beach. v. United States Dep't. of Commerce*, 995 F.2d 1247, 1253 (4th Cir.1993) (citations and quotes omitted).

Consideration of the so-called "deliberative process privilege" requires the analysis of numerous factors, including:

(a) whether the document is "predecisional" (i.e., whether it was generated before the adoption of an agency policy); (b) whether the document is "deliberative" (i.e., whether it reflects the give-and-take of consultative process); (c) whether the document is so candid or personal in nature that public disclosure would stifle honest and frank communication in the future; and (d) whether the document is recommendatory in nature or is a draft of what will become a final document.

*Burke Energy Corp. v. Dep't. of Energy*, 583 F.Supp. 507, 513 (D.Kan.1984).

While these factors have provided the bases for many a robust skirmish in FOIA cases, they should not blind us to the predicate requirement for application of Exemption 5: the documents in question must be "inter-agency" or "intra-agency" in origin. *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 121 S.Ct. 1060, 1067, 149 L.Ed.2d 87 (2001). FOIA defines "agency" as "each authority of the Government of the United States," 5 U.S.C. § 551(1), and "includes any executive department, military depart-ment, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." 5 U.S.C. § 552(f).

 "In order to determine the propriety of defendant's Exemption 5 claim, the Court must determine whether the materials requested are inter- or intra-agency materials, whether they are pre-decisional, and whether they are deliberative." *Times Journal Co. v. Dep't of Air Force*, 793 F.Supp. 1, 2–3 (D.D.C.1991). Defendants assert the withheld materials qualify as inter-agency materials, despite the involvement of the Tribe in their creation and maintenance. This arises in part, according to DOI and MMS, from the special fiduciary relationship between the Department of Interior and Native American tribes. *See Jicarilla Apache Tribe v. Supron Energy Corp.*, 728 F.2d 1555, 1563 (10th Cir.1984) (Seymour, J. concurring); *see also* Felix Cohen, *Handbook of Federal Indian Law* 221 (1982). The federal government, and the Department of Interior in particular, has always had a "unique obligation toward the Indians," *Morton v. Mancari*, 417 U.S. 535, 555, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974), so much so that "statutes passed for the benefit of dependent Indian tribes or communities are to be liberally construed, doubtful expressions being resolved in favor of the Indians." *Alaska Pacific Fisheries Co. v. United States*, 248 U.S. 78, 89, 39 S.Ct. 40, 63 L.Ed. 138 (1918).

But Exemption 5 to FOIA is neither ambiguous, nor specially crafted for the benefit of Native American tribes. In a case decided this year, the Supreme Court rejected the notion that tribes can claim special status for Exemption 5 purposes. In *Dep't. of Interior v. Klamath Water Users Protective Ass'n*, plaintiff/respondents requested memoranda regarding

longterm irrigation plans exchanged between the Department of Interior's Bureau of Reclamation and Indian tribes in the Klamath River Basin in Oregon. *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 121 S.Ct. at 1064. The Bureau invoked Exemption 5, a position flatly repudiated by the Supreme Court. *Id.* "There is simply no support for [an "Indian trust" exemption] in the statutory text, which we have elsewhere insisted be read strictly in order to serve FOIA's mandate of broad disclosure, which was obviously expected and intended to affect Government operations." 121 S.Ct. at 1069–70. The role of fiduciary on behalf of Indian tribes does not automatically supercede "the authority of the United States to represent different interests." *Nevada v. United States*, 463 U.S. 110, 142, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983) (quoted in *Klamath*, 121 S.Ct. at 1069).

Defendants contend that information shared between DOI, MMS and the tribe under the cooperative agreements is akin to communications between federal agencies and hired consultants. Exemption 5 has been extended in some cases to include information acquired from outside experts. *Hoover v. United States Dep't. of the Interior*, 611 F.2d 1132 (5th Cir.1980) (independent cave appraiser); *Gov't Land Bank v. Gen. Servs. Admin.*, 671 F.2d 663, (1st Cir.1982) (independent property appraisal); *Wu v. Nat'l Endowment for Humanities*, 460 F.2d 1030 (5th Cir.1972) (evaluation by Chinese history experts).

But each of the cases which have extended Exemption 5 to information originating from outside a federal agency share a common characteristic: the nongovernmental source was essentially independent. This was a decisive factor for the Supreme Court in rejecting tribal claims to deliberative process protection in *Klamath Water Users*. 121 S.Ct. 1060, 1067–68. Whereas outside consultants do not communicate with an agency "in their own interest or on behalf of any person or group whose interests might be affected by the Government action addressed," the Hoopa Valley, Karuk and Yurok tribes in *Klamath*, as with the Jicarilla here, "necessarily communicate with the Bureau with their own, albeit entirely legitimate, interests in mind." *Id.* Because of this critical difference, "[t]here is [ ] no textual justification for draining the [intra-agency or inter-agency] condition of its independent vitality, and once the intra-agency condition is applied, it rules out any application of Exemption 5 to tribal communications on analogy to consultants' reports." *Id.*, 121 S.Ct. at 1067.

● **Summary Judgment**

Defendants have failed to show either Exemption 4 or 5 to the Freedom of Information Act apply to the contested materials, and therefore cannot demonstrate that they are entitled to summary judgment. This is not a question of fact regarding the application of the Exemptions to the specific contents of individual documents. Instead, as the Court's examination has made clear, the commercial information protection of Exemption 4, and the deliberative process privilege of Exemption 5 are wholly inapplicable to the requested materials as a matter of law.

In FOIA cases, the agency attempting to withhold information has the burden of proving requested documents fall under a FOIA exception. *Niagra Mohawk Power Corp. v. Dep't. of Energy*, 169 F.3d 16, 18 (D.C.Cir.1999). "The burden upon the requester is merely to establish the absence of material factual issues before a summary disposition of the case could permissibly occur." *Public Citizen Health Research Group v. Food & Drug Admin.*, 185 F.3d 898, 904 (D.C.Cir.1999) (quotation omitted).

Because the materials requested by Plaintiff are not protected from disclosure

under any conceivable application of Exemptions 4 and 5, and these are the only exceptions to FOIA asserted by Defendants, the Court does not believe its consideration of this issue would be assisted by further briefing. The Tenth Circuit recognizes that " '[a] court may grant summary judgment sua sponte so long as the losing party was on notice that [it] had to come forward with all of [its] evidence.' " *Scull v. New Mexico,* 236 F.3d 588, 600 (10th Cir.2000) (quoting *Sports Racing Servs., Inc. v. Sports Car Club of America, Inc.,* 131 F.3d 874, 892 (10th Cir.1997)). The absence of factual questions and the clear weight of the law compel this Court to issue summary judgment in favor of the Plaintiff.

### Conclusion

Defendants cannot establish as a matter of law that the information withheld from Plaintiffs is commercial or financial, obtained from a person, and privileged or confidential, which would protect that information from disclosure under Exemption 4 of the Freedom of Information Act. Nor are they able to demonstrate as a matter of law that the withheld information qualifies as inter- or intra-agency communications for the purposes of Exemption 5 of FOIA.

Therefore, the Court **HEREBY ORDERS** that Defendants' Motion for Summary Judgment is **DENIED. FURTHER,** upon consideration of all evidence presented in this matter, the Court finds no material questions of fact and argument on a motion for summary judgment by Plaintiff would be redundant. Therefore, summary judgment *is* **GRANTED** *sua sponte* in favor of Plaintiff Merit Energy Company.