SIERRA CLUB, Alaska Wilderness League, Defenders of Wildlife, the Wilderness Society Plaintiffs,

v.

UNITED STATES DEPARTMENT OF INTERIOR, United States Fish and Wildlife Service, United States Geological Survey Defendants.

No. CIV.A. 03–00652(RMC).

United States District Court, District of Columbia.

Dec. 6, 2004.

**10**

Michael Carr, Heldman & Carr, L.L.P., David G. Bookbinder, Washington, DC, for Plaintiffs.

Ori Lev, United States Department of Justice, Washington, DC, for Defendants.

### MEMORANDUM OPINION

COLLYER, District Judge.

In this lawsuit brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, Plaintiffs Sierra Club, Alaska Wilderness League, Defenders of Wildlife, and The Wilderness Society[1] mount a broad attack on the handling of two specific FOIA requests and the entire FOIA program at the Department of Interior ("DOI"). Both parties have filed motions for summary judgment.

### I. BACKGROUND

Two separate, overlapping, FOIA requests are at issue here.

---

**1.** Plaintiffs are represented by Trustees for Alaska, who are counsel in the suit and not a

*A. The ANWR Request*

By letter dated February 26, 2002, Plaintiffs submitted a FOIA request to the DOI FOIA Officer. It was received on March 12, 2002, and immediately referred to the Office of the Secretary ("OS") for processing. This request sought documents regarding the Arctic National Wildlife Refuge ("ANWR"). Specifically, the request sought:

1. Any and all reports, documents, scientific studies, all records of inter-agency, intra-agency, or meetings and discussions including meeting notes and transcripts, e-mail correspondence, and notes of telephone conversations in the possession of the Department of the Interior and its sub-agencies, requested by and/or provided to the senior White House advisor, Karl Rove, or other White House personnel (1600, Pennsylvania Ave., N.W., Washington, D.C. 20500), regarding proposals to drill and/or explore for oil in all or part of the coastal plain of the Arctic National Wildlife Refuge from January 1, 2001 through the present.

2. Any and all correspondence and/or communications within the Interior Department regarding proposals to drill and/or explore for oil in all or part of the coastal plain of the Arctic National Wildlife Refuge from January 1, 2001 through the present.

3. Any and all correspondence and/or communications between the Interior Department and any private interest including the State of Alaska to specifically include Cam Toohey and/or Drue Pearce, special assistants to the Secretary of Interior for Alaska, the oil industry or oil industry trade associations, Arctic Power

FOIA requester as suggested by the DOI's papers.

(1049 West 5th Avenue, Anchorage, AK 99501) from January 1, 2001 through the present.

4. A copy of all Freedom of Information Act Requests submitted to the U.S. Department of the Interior and its sub-agencies and all responses thereto, to include all documents and indexes of documents both released and withheld, by Arctic Power since January 1, 2001.

Declaration of Nancy Appler ("Appler Decl."), Ex. A ("ANWR Request"). The ANWR Request sought documents from DOI headquarters *and* from "any unit or office of the Department, including national and regional offices." *Id.* It also sought a fee waiver on the ground that "disclosure of the information sought would be in the public interest." *Id.*

Nancy Appler was assigned to handle the ANWR Request for DOI. She called the signatory on the letter, Tom Ofchus, on March 22, 2002, to discuss the scope of the Request and the fee waiver. Ms. Appler thereafter faxed a letter summarizing the phone conversation to Mr. Ofchus. *Id.*, Ex. B. That letter addressed the fee waiver and asked for further clarification as to entitlement. *Id.*, Ex. B. The letter also noted the "extremely broad nature of this request" and set forth a more limited interpretation, based on the telephone conversation. *Id.* Ms. Appler stated her understanding that Mr. Ofchus "in turn would discuss [the more limited interpretation of the Request] internally and communicate back to [DOI] (by fax) next week." *Id.*

Ms. Appler identified seven offices within DOI that constituted "likely sources" to locate the requested records[2] and asked Mr. Ofchus to "let us know if you agree." *Id.*, Ex. B. The letter concluded with Ms. Appler's statement, "I hope that I have interpreted our discussion appropriately, and we look forward to your concurrence in that regard." *Id.* She then advised, "When we have that concurrence, as we agreed, we will begin our identification of responsive documents ...." *Id.* Ms. Appler followed up with a telephone call to Mr. Ofchus on April 2, 2002, confirming that he had received the March 22 letter and would confer with his clients. Appler Decl. ¶ 9. On April 19, 2002, when no response was received, DOI administratively closed the ANWR Request.

The Trustees did respond to the March 22 letter, albeit later than DOI requested, and essentially rejected DOI's attempt to narrow their request. By faxed letter dated May 6, 2002, the Trustees reiterated that they wanted "any and all documents that are responsive to our February 29 information request ...." *Id.*, Ex. C at 5. While the Trustees "agree[d] that the offices identified [in the March 22 letter and in the margin here] are likely sources," they also repeated their request that DOI "search any additional offices that may contain responsive documents." *Id.* at 6. For the first time, the Trustees asserted that their clients qualify as "educational institutions" and should therefore receive a fee waiver. Finally, they clarified that they wanted copies of FOIA requests submitted by Arctic Power or by any of 29 identified individuals.

Sue Ellen Sloca, FOIA Officer for the Office of the Secretary, responded to the Trustees' May 6 letter on May 31. *Id.*,

---

**2.** The seven locations were the DOI FOIA Office, the Office of the Secretary FOIA Office, the Fish and Wildlife Service ("FWS") Headquarters FOIA Office, Region 7 (Alaska) FOIA Office, the Bureau of Land Management ("BLM") Headquarters FOIA Office, the BLM Alaska State Office FOIA Office, and the U.S. Geological Survey ("USGS") FOIA Office (headquarters).

Ex. D. First, she explained that the February 29 FOIA Request had been closed as the Trustees had not responded to Ms. Appler's March 22 letter within 20 work days. She also explained the reason for this OS policy and told Mr. Ofchus that the May 31 letter was being treated as a new FOIA request with a new number. Second, Ms. Sloca questioned whether Plaintiffs qualified as educational/non-commercial scientific institutions, explaining the definitions for those terms used by OS. Third, Ms. Sloca provided DOI's interpretations of the scope of the ANWR Request, on an item-by-item basis, and advised, "We can begin processing ... once we receive written confirmation that our understanding of what you are requesting ... is accurate." *Id.* Finally, DOI agreed that items one through three of the ANWR Request qualified for a fee waiver but denied the waiver as to item 4 (regarding copies of FOIA requests submitted by Arctic Power and 29 individuals). Ms. Sloca offered four options for handling item 4 and concluded by asking for written confirmation on all terms within 20 working days.

The Trustees answered the May 31 letter on June 27. They disagreed with the DOI description of their request, insisted on its intended broad scope, and requested a formal denial of a fee waiver for item 4. DOI did not respond to this letter and on September 19, 2002, the Trustees wrote again, quoted their June 27 letter in whole, and stated that they believed that DOI had denied the ANWR Request.

In the meantime, DOI had actually begun to search for responsive records, despite the lack of agreement on the scope of Plaintiffs' request. Initially using Ms. Sloca's May 31 letter as the ANWR Request, Ms. Appler contacted FOIA Officers at the USGS, BLM and FWS, the FWS Alaska Office, the Secretary's Immediate Office (consisting of the offices of the Secretary of the Interior, the OS, the Office of the Deputy Secretary, the Executive Secretariat, the Office of Congressional and Legislative Affairs, and the Office of Communications), and the Office of the Assistant Secretary–Policy, Management, and Budget ("ASPMB"). When the Trustees insisted on a broad reading of the ANWR Request, Ms. Appler contacted each of these offices again to convey the breadth of the ANWR Request and ensure that the search was accordingly broad enough.

On May 2, 2003—after the filing of the original complaint in this action but before the filing of the amended complaint[3]— DOI.responded to the ANWR Request by releasing approximately 1,784 documents, of which 1,733 were released in full and 51 were partially redacted. On May 30, 2003, DOI provided Plaintiffs with one compact disk ("CD") containing additional responsive documents. Fourteen (14) additional pages were released on July 10, 2003. DOI withheld in full approximately 340 pages of records, in addition to the 51 pages of records that were partially redacted. Most of the withheld materials were withheld under FOIA Exemption 5, pursuant to the deliberative process privilege.[4] Some material was withheld under FOIA Exemption 6; these consisted of home or cellular telephone numbers or

---

3. Plaintiffs filed their original complaint in this action on March 11, 2003. Plaintiffs filed an amended complaint on June 13, 2003 to provide a factual basis to support their claim under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.

4. FOIA does not require an agency to produce "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5)("Exemption 5").

home addresses.[5] The materials withheld under Exemption 6 are not at issue and will not be further addressed.

## B. The BRD Request

The Trustees filed a second FOIA request on April 16, 2002, on behalf of the Alaska Wilderness League ("AWL"), The Wilderness Society ("TWS"), Defenders of Wildlife ("DOW"), and the Sierra Club. This request asked for:

Any and all communications, including letters, memoranda, meeting notes and transcripts, e-mail correspondence, and notes of telephone conversations in the possession of the U.S. Department of the Interior and its sub-agencies, regarding the United States Geological Survey report entitled *Arctic Refuge Coastal Plan Terrestrial Wildlife Research Summaries, Biological Science Report,* USGS/BRD/BSR–2002–0001 (released March 29, 2002), and any and all planned updates, new versions, new analyses or follow up work of any kind related to that report. This request specifically includes information related to the process under which any future and related report was or will be initiated, as well as the details of any development scenarios to be used as assumptions in any new report.

*See* Appler Decl. Ex. G (the "BRD Request"). The. BRD Request sought records at DOI headquarters (where the Request was directed) and also from "any unit or office of the Department, including national and regional offices." *Id.* As before, the Trustees sought a fee waiver on behalf of this group of clients. *Id.*

DOI responded to the BRD Request on April 22, 2002, noting that it was considering the request for a fee waiver. With the BRD Request, there was no back-and-forth concerning its scope and Ms. Appler began the process of searching for records immediately. She contacted the Secretary's Immediate Office, the Deputy Secretary's office, the Office of Congressional and Legislative Affairs, the Office of Communications, the Executive Secretariat, and the FOIA offices at USGS and FWS. Appler. Decl. ¶¶ 19–20. USGS thereafter searched for records at its headquarters and Alaska Regional Offices, including the Alaska Science Center, which was responsible for the BRD Report. FWS searched its Region 7 office in Alaska and its ANWR staff. *Id.* In light of the two FOIA requests, Ms. Appler expressly ensured that each office was aware that there were two distinct requests seeking different sets of records. *Id.* ¶ 20.

On May 9, 2003, DOI provided the requesters with approximately 939 pages of responsive documents. Of these, approximately 572 were released in full and approximately 367 were partially redacted. On July 10, 2003, DOI released approximately 64 additional pages of responsive documents. It withheld in full approximately 406 pages pursuant to FOIA Exemptions 5 and 6.

## C. Explanation for Delay

DOI basically completed its searches for records responsive to the ANWR Request and the BRD Request by the end of June 2002. However, the documents were not provided to the plaintiff organizations until 2003. DOI explains that its FOIA resources were directed to "extensive litigation responsibilities occasioned by lawsuits involving the Vice President's National Energy Policy Development Group and

---

**5.** FOIA does not require an agency to produce "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(5)("Exemption 6").

National Energy Plan." Appler Decl. ¶ 21. In addition, DOI experienced an increase of more than 20% in the number of FOIA requests to OS at the same time that it lost an intern, resulting in only two employees being responsible for all of the OS FOIA activities at that time. *Id.* Lastly, DOI states that the necessity of reviewing hundreds of pages of predecisional emails and making appropriate redactions was extremely time-consuming and that "[o]nly the addition of two contract employees to the OS FOIA staff enabled it to complete this processing as quickly as it did." *Id.*

## II. LEGAL STANDARDS

█ Summary judgment is the routine vehicle by which most FOIA actions are resolved where there are no material facts genuinely at issue. *See Alyeska Pipeline Serv. Co. v. EPA,* 856 F.2d 309, 314–15 (D.C.Cir.1988); *Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C.Cir.1981). FOIA requires agencies of the federal government to release records to the public upon request, unless one of nine statutory exemptions applies. *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 136, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). "Disclosure, not secrecy, is the dominant purpose of the Act." *Dep't of the Air Force v. Rose,* 425 U.S. 352, 361, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976); *DOI v. Klamath Water Users Protective Ass'n,* 532 U.S. 1, 8, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001). FOIA gives an agency twenty working days to determine "whether to comply with such request and . . . immediately notify the person making such request of such determination and the reasons therefor" and the requester's right to appeal any adverse determination. 5 U.S.C. § 552(a)(6)(A)(i). This time limit may be extended for up to ten days under unusual circumstances. *Id.* at § 552(a)(6)(B)(i). An agency may also notify a requester that a request cannot be timely processed and provide an opportu-

nity for the requester to limit the scope of his request or to "arrange with the agency an alternative time frame for processing the request." *Id.* at § 552(a)(6)(B)(ii). "Refusal by the [requester] to reasonably modify the request or arrange such an alternative time frame shall be considered as a factor in determining whether exceptional circumstances exist . . . ." *Id.* One factor that constitutes an unusual circumstance under the Act is "the need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records which are demanded in a single request." *Id.* at § 552(a)(6)(B)(iii)(II).

An agency may assess fees for its search and for its review and duplication of documents. *Id.* at § 552(a)(4)(A)(i). Fees may be waived altogether or assessed at lesser cost "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." *Id.* at § 552(a)(4)(A)(iii). Fees for educational or noncommercial scientific institutions "whose purpose is scholarly or scientific research" are limited to duplication costs. *Id.* at § 552(a)(4)(A)(ii)(II).

█ The court conducts a *de novo* review of an agency's determination to withhold records. 5 U.S.C. § 552(a)(4)(B); *see Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.,* 608 F.2d 1381, 1384 (D.C.Cir.1979). The government bears the burden of justifying non-disclosure. *See McCutchen v. United States Dep't of Health & Human Servs.,* 30 F.3d 183, 185 (D.C.Cir.1994). It may satisfy that burden through the submission of agency declarations of sufficient detail to describe the withheld material with reasonable specificity, and the reasons for non-disclosure. *United States*

*Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 753, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). This degree of particularity is usually supplied by a *Vaughn* index, named for *Vaughn v. Rosen,* 484 F.2d 820, 823–25 (D.C.Cir.1973), *cert denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

FOIA cases often concern the scope of an agency's search for records and whether it was adequate. *See Weisberg v. Dep't of Justice,* 745 F.2d 1476, 1485 (D.C.Cir. 1984) (agency must "demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents."). Plaintiffs here do not challenge the scope of DOI's searches. Instead, they attack the Government's reliance on Exemption 5 to withhold documents.

██ FOIA does not require an agency to produce "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5) ("Exemption 5"). This exemption "exempts those documents . . . that are normally privileged in the civil discovery context," including the deliberative process privilege known at common law. *Sears,* 421 U.S. at 149, 95 S.Ct. 1504. Such records are those that "reflect[ ] advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated." *Id.* at 150, 95 S.Ct. 1504. The purpose of the privilege is to "enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." *Klamath Water Users Protective Ass'n,* 532 U.S. at 9, 121 S.Ct. 1060 (citations omitted).

██ "In deciding whether a document should be protected by the privilege [courts] look to whether the document is 'predecisional'—whether it was generated before the adoption of an agency policy— and whether the document is 'deliberative'—whether it reflects the give-and-take of the consultative process." *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 866 (D.C.Cir.1980). "To establish that the document is predecisional, the agency need not point to an agency final decision, but merely establish what deliberative process is involved, and the role the documents at issue played in that process." *Judicial Watch v. Export–Import Bank,* 108 F.Supp.2d 19, 35 (D.D.C.2000)(citing *Formaldehyde Inst. v. HHS,* 889 F.2d 1118, 1123 (D.C.Cir.1989)).

### III. DISCUSSION

Plaintiffs assert that the DOI violated FOIA in two ways by its withholdings here: (i) it withheld records to which Exemption 5's deliberative process privilege does not apply, and (ii) it failed to explain its reasons. *See* Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment and in Opposition to Defendants' Motion to Dismiss and for Summary Judgment ("Pls.' Mem") at 11. They have challenged the withholding of virtually every document withheld, in whole or in part, under FOIA Exemption 5 by advancing four central points: (1) DOI withheld documents that relate to decisions already made; (2) DOI withheld documents that do not relate to any identifiable decision; (3) DOI withheld documents that have no bearing on the formulation of policy; and (4) DOI withheld documents that contain factual or segregable information. In addition, Plaintiffs argue that the public interest in disclosure outweighs the Government's interest in withholding records.

### A. *"Decisions Already Made"*

██ It is agreed by all parties that the deliberative process privilege applies to

records "generated *before* the adoption of an agency policy." *Senate of the Commonwealth of Puerto Rico v. Dep't of Justice*, 823 F.2d 574, 585 (D.C.Cir.1987)(emphasis in original). Plaintiffs argue that large numbers of the withheld documents fail this test:

> The "agency policy" adopted by the Department, and to which Plaintiffs' FOIA requests were addressed, was its policy to seek Congressional passage of legislation that would permit oil and gas exploration and development activities in the Arctic National Wildlife Refuge. This policy was a cornerstone of the Department of Interior's position on energy issues, both during the 2000 election of President Bush, *see* Defendants' Answer at 6–7, ¶ 32, and during Congressional debate over the various pieces of energy legislation. As this decision clearly was already made, no "predecisional" process exists as to the vast majority of the withheld documents.... [T]he Department repeatedly identifies smaller decisions that are simply steps to implement this larger, already-adopted policy.

Pls.' Mem. at 18. This argument presents too simplistic a view of agency decision and policy process. Major policies may be advocated by any candidate but then be modified or not adopted at all after the internal debate and deliberation with career experts that precedes agency or congressional action. The privilege protects the "deliberative process" because it is the very process of debating, shaping, and changing a proposed major policy that needs candor, vigorous to-and-fro, and freedom of expression. Thus, while the President may have advocated development in ANWR, the DOI faced multiple policy debates and decisions as to whether, where, and how to begin that process and how to achieve its success in Congress.

Furthermore, Plaintiffs' argument ignores contrary law, which recognizes that smaller policy decisions legitimately make up major policy positions. In *Access Reports v. Dep't of Justice*, 926 F.2d 1192 (D.C.Cir.1991), the D.C. Circuit agreed that the deliberative process privilege protected the same kinds of documents at issue here concerning proposed legislation. "Exemption 5 protects such communications just as it protects ones contributing to deliberations about whether to introduce legislation in the first instance." *Id.* at 1196–97; *see also Judicial Watch, Inc. v. Reno*, No. 00–0723(JR), 2001 WL 1902811, at *3–4 (D.D.C. Mar. 31, 2001) (rejecting similar argument and noting that "the Elian Gonzalez situation involved multiple agency decisions," including many made after the decision to return Elian to his father); *Thompson v. Dep't of the Navy*, No. 95–347(RMU), 1997 WL 527344, at *5 (D.D.C.1997)(deliberative process privilege applied to materials for news briefing since issue "concern[ed] what information [the agency] was going to disclose to the media"); *Williams v. U.S. Dep't of Justice*, 556 F.Supp. 63, 65–66 (D.D.C.1982) (privilege applied to briefing papers for appearance before congressional committee).

Nonetheless, we are instructed by the D.C. Circuit that "a court must be able 'to pinpoint an agency decision or policy to which the document contributed.' " *Senate of the Commonwealth of Puerto Rico v. U.S. Dep't of Justice*, 823 F.2d 574, 585 (D.C.Cir.1987). This takes us to DOI's *Vaughn* indices and Plaintiffs' challenge, presented partly in their brief and partly by way of a chart.[6] The chart, Exhibit 1

---

6. Each of the charts in Plaintiffs' Exhibit 1 is headed with reference to DOI's Exhibit K, the *Vaughn* index for the ANWR Request. Since there are two charts and they are not identi-

to Plaintiffs' Memorandum, identifies each withheld document by number and asserts, by way of an X, one or more of the following 11 alleged deficiencies for each of the hundreds of documents withheld in whole or in part:

(1) No specific decision to which document relates is identified in the index;

(2) The document contains a statement of policy and interpretation that has been adopted by agency;

(3) The document is part of agency's 'working law', *i.e.*, orders, decisions, interpretations, instructions, and guidelines which have precedential weight and affect the public;

(4) The document is not a direct part of predecisional process. It does not make recommendations or express opinions on legal or policy matters to be decided by agency;

(5) The index contains insufficient information to establish applicability of deliberative process exemption (too vague);

(6) The agency has already adopted, formally or informally, the position on an issue or is using [sic] in its dealings with the public;

(7) The document contains purely factual, investigative matter;

(8) The document contains facts are severable [sic] from exempt portions;

(9) The index does not identify an author and/or recipient, thus its disclosure would have no chilling effect on open exchange of opinions within the agency;

(10) The document has no bearing on the formulation or exercise of agency policy-oriented judgment;

(11) The information the agency sought to withhold is not associated with any significant policy decision.

Pls.' Mem. Ex. 1 at 1. Each of the 11 theories of violation is followed by a case citation. The DOI assails this argument-by-chart, noting that Plaintiffs address four categories of deficiencies in their brief, not 11; that they fail to explain Exhibit 1 in their brief; and that their brief and Exhibit 1 are sometimes in disagreement. *See* Defendants' Reply in Further Support of Their Motion to Dismiss and for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment ("Defs.' Reply") at 3. Plaintiffs respond that they were "comprehensive in Exhibit 1 and illustrative in briefing in an attempt to make the voluminous withholdings more manageable for the Court." Plaintiffs' Reply in Support of Their Motion for Summary Judgment ("Pls.Reply") at 3.

While the Court appreciates the sentiment of making this case more manageable, it rejects Plaintiffs' chart as an adequate vehicle to litigate FOIA exemptions, not because a chart is used but because Plaintiffs' Exhibit 1 goes far beyond the arguments and theories of its brief and imposes on the Court the obligation to comb through this extensive record to figure out what Plaintiffs are complaining about, what documents are really at issue for each of 11 theories of violation, and what the Government's position is on each document under 11 different theories. Because Plaintiffs did not want to have to explain themselves, they want the Court to do the work of interpreting their chart and arguments for them. This does a disservice to the Court and prejudices the Government in defending its FOIA determinations. The Court will decide the case that Plaintiffs have briefed.

cal, the Court assumes that the first chart relates to Exhibit K, the *Vaughn* index for the ANWR Request, and the second chart relates to DOI Exhibit L, the *Vaughn* index for the BRD Request.

We return to the main menu. Plaintiffs argue that the DOI has withheld "a broad universe of documents from public review by splitting their 'decisionmaking process' into innumerable small and wholly undefined policy decisions entirely unlike the analytical report at issue in *Access Reports* [*v. Dep't of Justice*]." Pls.' Reply at 7. They add, "The practical effect of the Defendants['] argument is the creation of a wholesale exemption from FOIA for documents related to pending legislation, wherein the entire Office of Congressional and Legislative Affairs ["OCL"] is shielded," which would have "horrifically broad implications." *Id.* at 9–10. Beyond this argument, the charts on Plaintiffs' Exhibit 1 argue that all but 93 of the withheld documents suffer from not being related to any specific decision.

The Court agrees that DOI cannot erect a blanket FOIA shield over the OCL. The mere fact that a requested document is located within OCL has no impact on release of the document under FOIA or on the application of FOIA's exemptions. The Act requires each agency to locate requested documents, to examine each document to determine if it should be released in whole or in part, and to withhold only those documents or segregable parts of documents as to which an exemption applies. *See* 5 U.S.C. § 552(b); *Billington v. Dep't of Justice*, 233 F.3d 581, 586 (D.C.Cir.2000). This obligation falls on OCL to the same degree that it falls on any other agency or office of DOI. It may be that the nature of OCL's work means that FOIA exempts a larger proportion of its documents than documents at other agencies, but the document-by-document evaluation required by FOIA must be performed. It is because FOIA requires such a particularized analysis that the agency (or OCL) must present a *Vaughn* index and a plaintiff must specify which decisions to withhold that it challenges.

██ The most critical of Plaintiffs' challenges are to documents, withheld as "predecisional," that allegedly relate to a decision already made. However, the record does not support Plaintiffs' argument. Exhibit K, concerning the withholdings from the ANWR Request, illustrates the very nature of deliberation: people "talking" by email, developing drafts, expressing concerns, and debating options. DOI overstates the exemption when it baldly states, "[a]s a draft, this document is predecisional," [7] but it satisfies FOIA in its detailed descriptions. Doc 18E in Exhibit K is illustrative. The document is a "draft of an issue paper [headed "Topic: Development of Oil and Gas in the Arctic National Wildlife Refuge—2/11/12"] describing the ANWR and its potential for development for oil and gas production. It includes arguments in support of such development, some draft questions and answers, some preliminary identification of advocates and opponents of ANWR development, and potential legislative initiatives." Ex. K at 14, Doc 18E. Because the document is a draft containing points that are critical to DOI's internal deliberations of whether, where and how to advance development in ANWR, it is part of the deliberative process by which DOI decided how to proceed. *See Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 257–58

**7.** A "draft" may become the "final." The earlier version of the identical document would not be privileged merely because it was labeled "draft." *See Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 257 (D.C.Cir.1982). A true draft that is changed, commented upon, and edited could be predecisional if it meets appropriate standards. *Id.* at 257–58; *see also Burke Energy Corp. v. Dep't of Energy*, 583 F.Supp. 507, 513 (D.Kan.1984)(holding that draft documents that represented "the tentative position of agency personnel and [were] subject to revision" are predecisional and therefore exempt from disclosure).

(D.C.Cir.1982); *Burke Energy Corp. v. Dep't of Energy*, 583 F.Supp. 507, 513 (D.Kan.1984).

■ More specifically, Plaintiffs complain that "Talking Points for Muskoxen," Ex. L at 2, Doc 4,[8] should not be exempt. That document is an email dated 3/27/02 with an attached page that was withheld. (The email itself was released.). DOI states that "[t]he withheld page consists of draft talking points regarding muskoxen on the ... [ANWR] coastal plain and the potential effects of petroleum exploration and development on muskoxen. It is a recommended way in which the Department may present to the public the effects of energy development on muskoxen. These draft talking points are an internal proposal ... predecisional to the actual communication of such information and issues." *Id.* This explanation satisfied DOI's obligations under FOIA. It specified the decision at issue (communicating the Department's opinion on petroleum exploration and muskoxen) and that the document contained recommendations, which may or may not have been adopted. A memo making recommendations or presenting options reflects the essence of internal deliberations that Exemption 5 was designed to protect. *See Sears*, 421 U.S. at 150–52, 95 S.Ct. 1504.

■ Plaintiffs also question withholding six draft letters to Senators and Representatives because "they concern a decision on an agency policy that has already been adopted." Pls.' Mem. at 19; Ex. K at 29–31, Docs 28–33. The generalized argument that the decision had already been made, as noted above, is rejected by the Court. These particular documents are all drafts of suggested responses to inquiries

from Capitol Hill. DOI cites *Krikorian v. Dep't of State*, 984 F.2d 461 (D.C.Cir.1993), to support its withholding of these drafts. The letters at issue in *Krikorian* were "two options for replies to public inquiries." *Id.* at 466. As the District Court in *Krikorian* explained,

> The two draft letters ... clearly fall within the protected category of predecisional, deliberative documents. At the time the letters were submitted, the agency had not yet adopted a final position on how to respond .... The letters represent the building blocks of policymaking, proposed recommendations by agency employees for how the agency might respond to inquiries on a sensitive foreign policy issue, and were part of the careful consideration of proposals central to the deliberative process. As the court in *National Wildlife Federation v. U.S. Forest Service*, 861 F.2d 1114, 1121 (9th Cir.1988) stated, "Recommendations on how best to deal with a particular issue are themselves the *essence* of the deliberative process. So long as such recommendations do not represent final agency policy, it is clear that they fall within the deliberative process privilege." (emphasis in original).

*Krikorian v. Dep't of State*, No. 88–3419(RCL), 1990 WL 236108, at *5 (D.D.C. 1990), *aff'd* 984 F.2d 461 (D.C.Cir.1993); *see also Town of Norfolk v. U.S. Army Corps of Engineers*, 968 F.2d 1438, 1458 (1st Cir.1992) (draft letter protected by deliberative process privilege). The Court agrees that these draft letters are privileged under Exemption 5 because they constitute recommendations from staff as to how agency officials might handle congressional inquiries. They clearly were subject to review and revision by the final

**8.** Defendants' Exhibit K is the *Vaughn* index for the ANWR Request and Exhibit L is the *Vaughn* index for the BRD Request.

sender. They "reflect advisory opinions that are important to the deliberative process." *Krikorian*, 984 F.2d at 466 (citation omitted). Again, the over-arching "policy" at issue here was development of ANWR; the specific "decision" was how best to respond to a related congressional inquiry.

Plaintiffs' reliance on *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975), is misplaced. *Sears* involved documents that reflected a final agency decision, *i.e.*, decisions by the General Counsel of the National Labor Relations Board *not* to prosecute alleged unfair labor practices. The memoranda in question "effect[ed] as 'final' a 'disposition' as an administrative decision can—representing as [they did], an unreviewable rejection of the [unfair labor practice] charge filed by the private party." *Id.* at 155, 95 S.Ct. 1504. Internal agency drafts—even drafts of the kinds of NLRB memoranda addressed in *Sears*—are not final agency action, as these draft letters were not.

### B. *"Unrelated to Any Identifiable Decision"*

██ Plaintiffs argue that DOI "repeatedly fails to identify a decision to which the withheld documents relate." Pls.' Mem. at 20. They cite Document 16B, in Defendant's Exhibit K, as an example.[9] The referenced document is an email dated 5/16/01 with two attachments: a narrative summary entitled "Summary: Comparison of EIS for National Petroleum Reserve–Alaska NPRA–A EIS and 102d and 107th Congress bills"; and "a chart with a side-by-side comparison of the NPR–A EIS." Defs.' Ex. K at 7, Doc 16B. The email was released and the attachments were redacted in their entirety. Exhibit K explains, "They highlight, one in summary format and one in chart format,

the major issues associated with these EISs [Environmental Impact Statements] and how their requirements differ or are similar. These comparisons are being provided to the OCL by the OPA [Office of Policy Analysis] to assist the OCL in determining how to address potential legislation on energy production in ANWR." Ex. K at 8, Doc 16B. As its basis for withholding these documents, DOI asserts:

> These redacted documents contain the Department's analysis of the two EISs and how they interrelate with potential legislation on ANWR energy production. These documents assist the OCL in deciding how to address the potential legislation. Their release would reveal the Department's deliberations on the ANWR energy production issue.

*Id.* Plaintiffs complain that DOI has failed to identify a decision that these documents precede but their argument fails in the face of the *Vaughn* index. The "decision" concerned "ANWR energy production" and, more precisely, "how to address the potential legislation." *Id.* The attachments compared and analyzed environmental studies already completed that could affect the Department's position on the legislation. The attachments were clearly related to policy decisions and therefore exempt under Exemption 5.

██ Similarly, Plaintiffs challenge the withholding of Doc 14 on Exhibit K, a "chart entitled 'S.389, the National Energy Security Act of 2001,' undated, author unknown," Ex. K at 6, Doc 14, for the failure of the connection to a Department decision. The document in question was withheld in full. It is "a chart containing an analysis of provisions of Senate bill No. 389," most of which is unrelated to the ANWR Request. *Id.* However, "one of its

---

9. Through what the Court assumes is merely a typographical error, Plaintiffs cite Doc 18B but quote Doc 16B. *Compare* Pls.' Mem at 20 *and* Defs.' Ex. K at 7, Doc 16B.

provisions involves developing energy in ANWR" and the document was for OCL to "develop[ ] its response to this proposed legislation on behalf of the Department." *Id.* DOI states that the chart "reflects the Department's preliminary analysis of its positions on the various provisions of this proposed legislation." Contrary to Plaintiffs' argument, the relevant decision is clearly stated: response to proposed legislation, which is a definite policy matter for a federal department.

According to Plaintiffs, DOI justified its withholding of several documents by asserting only that they contained "material for use in the Department's deliberations on the ANWR issue." *See* Pls.' Mem. at 21 (citing, e.g., Ex. K Doc 17; Doc 69 Md. 388, 16 A. ; 18B–O; 18Q–BB; 19C–H; 34; 36; 37; 39). Were this an accurate reflection of the record and the totality of the Department's reasoning, Plaintiffs' challenge would have merit. Further examination of Exhibit K, the *Vaughn* index for the ANWR Request, reveals additional description and explanation that satisfies DOI's FOIA obligations with the exception of Doc 39.

- "Doc 17" is actually four different documents. It encompasses a report prepared by OPA and titled, "Energy Bill–North Slope Options," two earlier drafts of this report, and a draft paper titled "Triggering Mechanisms for ANWR Oil and Gas Leasing Discussion Points." Ex. K at 12, Doc 17. The first paper and its drafts "contain options developed by the OPA to support Departmental policy decisions regarding what acreage may be offered for lease, what may be the surface occupancy constraints, and other miscellaneous considerations .... The other draft paper discusses the matter of establishing a trigger for ANWR energy development, such as oil im-

port levels. It presents several possible triggers, and other approaches, discussing the merits of each one." *Id.* DOI withheld these documents because they "present a variety of options and the considerations associated with differing courses of action" and are not final in any respect. The decisions at issue here are clearly identified (lease conditions and triggers for development) and the documents present options for consideration, which brings them within Exemption 5.

- Doc 16A is an email dated 2/26/01 with a one-page chart attachment. The portions of the email that were redacted "contain comments of the ... [USGS] on a chart developed by the OCL to explain certain data from a 1998 USGS study of ANWR oil reserves." *Id.* "The withheld chart represents the OCL's initial attempt to put data from a USGS study into a chart that would be useful for it to address the ANWR issue in Congress. The redacted parts of the email reflect an internal discussion of the data in the chart and the way in which it was presented." *Id.* The decision at issue here is the Department's position in Congress on ANWR and the document reflects an internal discussion of how that position should be developed and articulated, and whether the means adopted (by chart) was accurate, which brings it within Exemption 5.

- Doc 18B is a "draft briefing paper on the 'Arctic National Wildlife Refuge (ANWR.).'" It "sets forth the potential assertions and facts that may be used to support the administration's position on ANWR energy development .... [I]t discusses policy considerations and the relevant factual support for a potential Department position on the ANWR issue." The

description of this document fits it easily within Exemption 5. While "the administration" had articulated a position on ANWR energy development, the Department had its own analyses and expertise to bring to bear, in order to develop "a potential Department position on the ANWR issue." *Id.* This represents the essence of the deliberative process, whereby a major policy may be shaped, modified, reduced, enhanced, or ultimately rejected after internal expert consultations within the affected department[s].

- Doc 18C is a "[d]raft compilation of arguments propounded by outside groups regarding ANWR, with preliminary responses from the Department." *Id.* at 13, Doc. 18C. DOI asserts that this document "shows the development of the Department's policy regarding how to present its positions on ANWR," and, as a draft, is predecisional to the Department's final positions. The Court agrees. "Recommendations on how best to deal with a particular issue are themselves the *essence* of the deliberative process." *Nat'l Wildlife Fed'n v. U.S. Forest Serv.,* 861 F.2d 1114, 1121 (9th Cir.1988).

- Docs 18D and 18L are drafts of a paper titled, "Topic: Development of Oil and Gas in the Arctic National Wildlife Refuge." Ex. K at 13–14, Doc. 18D; at 16, Doc 18L. Each "includes arguments in support of such development and some draft questions and answers regarding ANWR development," which would show the development of the Department's policy "with respect how to present the rationale in support of development." *Id.* These documents are sufficiently described as containing "recommendations on how best to deal with a particular issue," *Nat'l Wildlife Fed'n,* 861 F.2d at 1121, to bring them properly within Exemption 5.

- Docs 18E, 18L, 18N and 18O are drafts of a paper with the same title as 18D. Ex. K at 14, Doc. 18E; at 16, Doc 18L; at 17, Docs 18N, 18O. DOI states that each is a draft "issue paper" that "includes arguments in support of such development, some draft questions and answers, some preliminary identification of advocates and opponents of ANWR development, and potential legislative initiatives." *Id.* The same analysis that applies to Docs 18D and 18L applies here.

- Docs 18F, 18I, 18K, 18U and 18W are drafts of a "Response to Environmental Group Statements on ANWR Development," each of which "offers preliminary thoughts on how the Department might respond to the arguments" of opponents of energy development in ANWR. Ex. K at 14, Doc 18F; at 15, Doc 18I; at 16, Doc 18K; at 19, Doc 18U; at 20, Doc 18W. Doc 18U also contains handwritten comments on the draft. These "preliminary thoughts" could be adopted, rejected or modified by the Department's officials and thereby constitute drafts of internal recommendations that are exempt from FOIA release under Exemption 5.

- Doc 18G is a one-page preliminary draft titled, "Environmental Group Statements re: ANWR" that is "a compilation of arguments associated with the development of the ANWR." Ex. K at 14, Doc. 18G. Its relationship to 18C, D, E, and F is apparent from its position within Exhibit K. The same analysis applies.

- Docs 18H and 18T, titled "ANWR: Myth v. Reality," are "an analysis of a speech entitled 'Energy Security is

American Security' given by Senator John Kerry, given in January, 2002," and a draft of the same analysis. Ex. K at 15, Doc 18H; at 19, Doc. 18T. "It breaks out the points in the speech that relate to the ANWR issues, and provides counter-points." *Id.* The documents are privileged under Exemption 5 because they represent OCL's recommendations to other Department spokespersons on how to "address inquiries regarding that speech." *Id.*; *see Judicial Watch,* 2001 WL 1902811, at *3 (privilege applies with respect to decisions regarding "how to handle press inquiries and other public relations issues").

- Doc 18J is an "[i]ssue paper discussing certain areas in ANWR as they are addressed in a 1997" EIS. Ex. K at 15, Doc. 18J. It "provides the OCL's analysis of one of the alternatives ... [and] frame[s] the issues with which the Department is concerned." *Id.* The document was prepared to assist in "consideration of options in relation to development of energy in ANWR, particularly with respect to certain discrete areas of interest." *Id.* at 15–16. A document that develops and presents options for decision by senior officials is privileged under Exemption 5; the decision here was the "development of energy in ANWR," in light of a 1997 EIS.

- Doc 18M is an email, from which a single sentence "instructing one of his subordinates to develop the one page briefing paper discussed in J," is redacted. Ex. K at 16, Doc 18M. While instructions from a superior to a subordinate, rather than recommendations from the subordinate to the superior, are not always considered part of the deliberative process, *Schlefer v. United States,* 702 F.2d 233, 238 (D.C.Cir.1983), the description given

by DOI in this instance satisfies its FOIA obligations, as the instruction in question (to develop an analysis) could itself reveal a preliminary version of the analysis.

- Doc 18Q is a "[d]raft briefing paper entitled 'Topic: Development of Oil and Gas in the Arctic National Wildlife Refuge,' with handwritten notes." Ex. K at 18, Doc 18Q. As with Docs 18D, E, L, N and O, this internal paper is exempt from release under FOIA Exemption 5, as are the handwritten notes by Legislative Counsel.

- Docs 18R and S are also drafts of the briefing paper concerning development of oil and gas in ANWR. Ex. K at 18, Docs 18R and 18S. Each contains "additional handwritten comments and instructions by the Director, OCL, indicating what should be included in the briefing paper." *Id.* This description illustrates the essence of the deliberative process as issues were identified, analyzed, and included in the draft briefing paper.

- Doc 18V is one page of "[h]andwritten notes on some calculations of surface area disturbance in ANWR .... The calculations concern the effects of energy development in ANWR on certain designated areas under consideration by the Department." Ex. K at 19, Doc 18V. DOI withheld Doc 18V in its entirety because it was prepared for use by a superior and "reflects matters that the OCL [was] looking into with respect to developing particular areas of ANWR, to help the Department determine whether and how to present these areas as development prospects." *Id.* at 20. This description goes far beyond "material for use in the Department's deliberations on the ANWR issue," which is the reason

given by Plaintiffs for challenging withholding Doc 18V. It identifies the decision at issue—"whether and how to present these areas as development prospects"—and the contribution of this document to consideration of options, *i.e.*, "calculations of surface area disturbance in ANWR." *Id.* at 19. While this was a subsidiary decision to the overall question of whether to institute oil and gas production in ANWR, it was nonetheless an analysis for use by DOI in determining the Department's recommendations to the Administration and to the Congress for legislation. For these reasons, it is privileged under the deliberative process privilege.

- Doc 18X contains "[h]andwritten notes on the issues associated with ANWR," further explained by DOI as "the notes of the Director, OCL, considering options for addressing potential legislation on energy development in ANWR. He was developing the course of action for the Department . . . ." Ex. K at 20, Doc 18X. Internal notes to oneself can be just as much part of the deliberative process as discussions, memos and emails with others. The decision is identified ("potential legislation") and the nature of the notes indicated ("considering options") with sufficient clarity to invoke properly Exemption 5.

- Doc 18Y is a briefing paper "discussing the ecological value of a particular area of ANWR." Ex. K at 20, Doc 18Y. This paper "outlines the prior land management approaches for the area, the current ecological resources in the area, and identifies a number of options for changing the status of the area consistent with protection of the ecological resources . . . ." *Id.* The document was prepared to support the development of policy, "particularly

with respect [to] how to address possible alterations to the status of the area." *Id.* at 21. As a briefing paper describing options for the development of policy, prepared by OCL for the use of higher-level officials, the document is privileged within Exemption 5.

- Doc 18Z is really two briefing papers, one titled "Leasing and Development Activities in Northern Alaska(MMS Alaska 1/2 3/02)" and another titled "Leasing and Drilling Activity in the Gulf of Mexico," with a fax cover sheet dated January 23, 2002. Ex. K at 21, Doc 18Z. The fax cover sheet was disclosed; the briefing paper concerning Mexico was withheld as not related to the ANWR Request. The briefing paper involving ANWR was withheld because it "provides several issues, projections, and assumptions regarding how development might proceed, at what cost, and with what expected results." *Id.* Prepared by the Minerals Management Service within DOI, the briefing paper was designed to "identify issues of concern and factual information that may be used to support the Department's eventual response" to Senator John Kerry's speech (referenced earlier). For the same reasons as earlier stated in regard to Doc 18H and 18T, these materials fall within Exemption 5.

- Doc 18AA is titled "Oil Development in the Arctic Refuge Myths and Facts," and contains handwritten comments. Ex. K at 21, Doc 18AA. The text of the document, prepared by "[o]pponents of energy development in the ANWR," *id.*, was released. The handwritten comments by the Director, OCL, were withheld as they reveal his thoughts "regarding the accuracy of the text, thoughts on what should be matters of concern for the

Department, and ideas on how the Department may respond." *Id.* As with Doc 18X, these handwritten notes are sufficiently described to indicate that they are the beginnings of the deliberative process concerning the specific points on the memo and energy development in ANWR.

- Doc 18BB is headed "H.R. 4" and offers a potential response to a question "regarding whether a provision in proposed legislation affects the administration of the Endangered Species Act," 16 U.S.C. § 1531, *et seq.* Ex. K at 22, Doc 18BB. This document was prepared by OCL for the purpose of developing a departmental policy on whether the ESA would be affected by the proposed ANWR legislation. *Id.* Because the decision is identified (development of DOI's position on the relationship between ESA and the proposed legislation) and the document contains internal advice to senior officials on that decision, it is privileged within Exemption 5.

- Docs 19C—19H are a collection of issue papers addressing options for development in the ANWR. Ex. K at 23—24, Docs 19C—19H. Their titles vary slightly: Doc 19C is titled "Alternative Option for ANWR," *id.* at 23, Doc 19D is titled "Possible Options for [ANWR],". *id.*, and Docs 19E and 19F are titled "New Options for Opening ANWR." *Id.* at 23–24. Docs 19G and 19H are copies of a slide show briefing to present the options to senior officials and to identify OCL's preferred option, with supporting reasons. *Id.* at 24. These materials are all covered by the deliberative process privilege as they relate to the major policy decision of whether and how to permit development in the ANWR.

- Doc 34 is titled "Arctic National Wildlife Refuge Revenues Issue Paper." Ex. K at 31, Doc 34. It is an analysis of "estimates of potential revenue from sale of possible oil and/or gas leases in ANWR. It also discusses potential timing of such lease sales, and the potential size of the sales. The mineral revenue issue is analyzed in the context of proposed legislation." *Id.* It was withheld because it discussed options for senior Department officials to consider "with respect to how possible royalty revenue might be affected by certain legislative proposals." *Id.* at 32. The deliberative process privilege exempts from disclosure this kind of analytical work on potential legislation. *See Jowett, Inc. v. Dep't of Navy,* 729 F.Supp. 871, 875–77 (D.D.C.1989)(noting that "even factual segments of documents are protected [by Exemption 5] from disclosure as not being purely factual if the manner of selecting or presenting those facts would reveal the deliberate [sic] process, or if the facts are inextricably intertwined with the policy-making process.") (citations and internal quotations omitted).

- Doc 36 is titled "ANWR Lease Sale Process" and is captioned "Draft Discussion Paper—For Internal Use Only." Ex. K at 32, Doc 36. It is a draft that provides background information, "notes the significant variables, and identifies a number of possible scenarios" by which "the Department may approach a lease sale for the 1002 area of ANWR," including "some revenue estimates." *Id.* The document was withheld because it was used "in development of policy positions to espouse with respect to ANWR, particularly with respect to how a lease sale may be conducted, should that be authorized by Congress." *Id.* Contrary to

Plaintiffs' argument, this description identifies the decision at issue (policy regarding lease sales) and the preliminary advisory purpose of the document in question, which is sufficient to bring it within Exemption 5.

- Doc 37 is an email between two employees addressing "ANWR questions by [C]ongress." Ex. K at 32, Doc 37. The email contains comments on potential responses from the DOI to Congress, with specific emphasis on "a point regarding bonus bids that [the writer] thinks should be included." *Id.* The email also "identifie[d] and comment[ed] on issues raised by [t]his recommendation." *Id.* These recommendations for responding to Congress are covered by Exemption 5 because they are predecisional to the actual response.

- Doc 39 is an email between an FWS employee and the Alaska Advisor "regarding data about caribou calving on the coastal plain in Alaska .... The employees are commenting on the accuracy of the data and whether they need to do anything additional to obtain the most accurate data." Ex. K at 33, Doc 39. The Court cannot discern from this description whether the email contains only commentary *about* the data and its integrity or whether it also contains the data itself. The former would be privileged as related to the development of policy concerning ANWR development and its impact on wildlife. The latter would *not* be privileged. DOI will be ordered to release Doc 39 or to provide a better description of its exempt status.

■ Plaintiffs also complain that DOI withheld Doc 18A because it "evince[s] the administration's development of energy policy across a broad spectrum of issues,"

and not because it is tied to any particular decision. Pls.' Mem. at 21 (citing Defs.' Ex. K at 12, Doc 18A). Exhibit K describes this document as "[a] list of topics to be discussed in Executive Branch testimony on energy-related issues, including ANWR," with instructions to prepare internal energy policy papers and handwritten notes. Ex. K at 12, Doc 18A. Because ANWR is included among the topics, the document is responsive to the ANWR Request. Because ANWR is merely one of the topics, "[t]he withheld pages evince the administration's development of energy policy across a broad spectrum of issues." *Id.* Plaintiffs' selective quote from the *Vaughn* index is misleading. Materials such as Doc 18A, which are preliminary to testimony before Congress, are exempt from disclosure under Exemption 5.

### C. *"No Bearing on the Formulation of Policy"*

Plaintiffs note that a document "must bear on the formulation or exercise of agency policy-oriented *judgment*" to be covered by the deliberative process privilege. Pls.' Mem. at 22 (quoting *Petroleum Info. Corp. v. U.S. Dept. of Interior*, 976 F.2d 1429, 1435 (D.C.Cir.1992)(emphasis in original decision)). They argue that draft responses to congressional letters that "appear to have requested primarily factual information" should not be exempt from disclosure as an exercise of policy judgment. Pls.' Mem. at 22; *see Wolfe v. Dep't of Health and Human Services*, 839 F.2d 768, 774 (D.C.Cir.1988).

■ The draft responses in question are found in Exhibit K at 28, Docs 23–33. Doc 23 is a proposed response to questions "about a letter from the Secretary of the Interior to Senator Murkowski about ANWR and the International Agreement on the Conservation of Polar Bears." Ex. K at 28, Doc 23. Doc 24 is a proposed

response to Senator Lieberman concerning a letter from the Secretary to Senator Murkowski "about ANWR." *Id.* at 29, Doc. 24. Docs 25 and 26 are copies of Doc 24. *Id.* Doc 27 is a draft response to Senator Lieberman regarding the Senator's questions about the Secretary's response to Senator Murkowski "about ANWR," as is Doc 28. *Id.* Doc 29 is a draft letter to Representative Linder, regarding "questions from one of Mr. Linder's constituents about a letter" from the Secretary to Senator Murkowski "about ANWR." *Id.* at 30, Doc 29. Docs 30 and 31 are draft responses to Senator Markey "regarding concerns he had about video footage of the ANWR during winter" that had been sent by DOI to the media. *Id.* Doc 32 is a draft response to Senator Murkowski "regarding resources and wildlife in the ANWR." *Id.* at 31, Doc 32. Lastly, Doc 33 is a draft letter to Representative Bingaman "regarding a U.S. Geological Survey assessment of oil and gas resources in the NPR–A" and Mr. Bingaman's request "that the Department release the data from that assessment before its completion." *Id.*

The Court disagrees with Plaintiffs' characterization of these letters as "primarily factual." Congressional relations over controversial legislation can require the utmost attention and tact. These draft responses were subject to review and editing before issuance. They constituted recommendations from staff about how to answer concerns expressed by Capitol Hill. As such, they are covered by Exemption 5. *See Access Reports*, 926 F.2d at 1196; *cf. National Sec. Archive v. F.B.I.*, 759 F.Supp. 872, 881 (D.D.C.1991)(holding that a briefing book prepared to assist an agency head in testimony before Congress was not exempt from disclosure pursuant to Exemption 5 because there was "no indication that the briefing book reports recommendations or . . . could be used to gain insight into the mental processes of the agency.").

▮ DOI withheld "[h]andwritten notes by the Alaska Advisor on a meeting with a representative of the City of Kakatovik." Ex. K at 25, Doc 20B. "The redacted notes contain the thoughts, impressions, and reactions of the Alaska Advisor on how the Department might utilize the input of the City of Kakatovik in pursuing energy development in ANWR." *Id.* Plaintiffs argue that utilizing advocacy by Kakatovik "may implicate the Department's legislative strategy," but it is not a policy-oriented judgment to which Exemption 5 applies. Pls.' Mem. at 22. This argument shortchanges the nature of the decision process at issue, which would necessarily include not just whether and where and how and how much development to pursue in ANWR but also how to convince Congress to pass appropriate legislation after those policy judgments were made. The personal handwritten notes of an individual, for purposes of making recommendations to senior officials, fit neatly within the deliberative process in which this sequence of analyses, recommendations, and decisions would occur.

Plaintiffs completely misread the *Vaughn* index for the ANWR Request in protesting that DOI "withheld its Communications Plan for the Senate Republican Energy Working Group. [Ex. K] at 4, Doc. 8." Pls.' Mem. at 22. Having the obligation to make an examination of each particularized complaint, the Court went to the Exhibit and discovered that "[t]he Communications Plan [was] provided in full, with the handwritten notes [of the Secretary's Alaska Advisor] redacted." Ex. K at 4, Doc 8. This allegation fails as a matter of fact.

D. *"Purely Factual or Reasonably Segregable Information"*

▮ A document is "deliberative" if it "expose[s] an agency's decisionmaking

process." *Dudman Communications Corp. v. Dep't of the Air Force,* 815 F.2d 1565, 1568 (D.C.Cir.1987). In contrast, "communications containing purely factual material are not typically within the purview of Exemption 5." *Julian v. Dep't of Justice,* 806 F.2d 1411, 1419 (9th Cir.1986), *aff'd,* 486 U.S. 1, 108 S.Ct. 1606, 100 L.Ed.2d 1 (1988). FOIA requires an agency to provide "any reasonably segregable portion of a record ... after deletion of the portions that are exempt." 5 U.S.C. § 552(b). Plaintiffs complain that DOI failed to segregate non-exempt factual material, even if other portions of documents were exempt. They point to Defendants' Exhibit K, Doc 18B, and Exhibit L at Docs 1, 4, 5, 19–23, 25–30, 32–33, 36–38, 46–48, 52–69, 70–73, 75, 77, 92–95, 100, 123, 125, 126, 144, 145, 152–155, 175–204, 206–227, 230–232, and 234–274, as pertaining to factual data regarding caribou herds that was segregable and therefore should have been released.

■■■■ Plaintiffs offer one sentence to support their argument concerning Doc 18B from Exhibit K, the *Vaughn* index for the ANWR Request. They assert that "the Department specifically acknowledges that [the] withheld document[ ] contain[s] purely factual material." Pls.' Mem. at 24. This argument presents another instance of Plaintiffs failing to give appropriate acknowledgment to the entirety of DOI's descriptions and explanations in the *Vaughn* indices. Doc 18B is "a draft briefing paper that sets forth the potential assertions and facts that may be used to support the administration's position on ANWR energy development." Ex. K at 13, Doc 18B. It "discusses policy considerations and the relevant factual support for a potential Department position" with respect to energy development in ANWR. *Id.* In other words, this draft document presented those facts and asser-

tions that the drafter thought would support development in ANWR. This is a far cry from "purely factual material," as argued by Plaintiffs. "[F]actual segments are protected from disclosure as not being purely factual if the manner of selecting or presenting those facts would reveal the deliberative process, or if the facts are 'inextricably intertwined' with the policymaking process." *Ryan v. Dep't of Justice,* 617 F.2d 781, 790 (D.C.Cir.1980) (footnotes and internal citations omitted). DOI sufficiently explained its basis for withholding this document.

■■■ Plaintiffs offer two sentences to support their argument concerning the 157 documents on Exhibit L, the *Vaughn* index for the BRD Request: "[M]any of the documents withheld in response to Plaintiffs' [BRD Request] pertain to factual data regarding caribou herds of ANWR .... This technical material is purely factual in nature and must be released under the FOIA." Pls.' Mem. at 24. Having carefully reviewed the 90 pages of the *Vaughn* index for the BRD Request, the Court concludes that Plaintiffs' argument seriously misses the mark. Most of the documents listed on Exhibit L reflect email traffic between and among DOI employees (many in different agencies within the Department) debating the finer details of the drafting, organizing, presentation and announcement of the BRD Report. Most of the documents give no indication of any kind that they relate to caribou herds or technical details. Doc 104, for instance, is an email from which several paragraphs were redacted because the employee sending the email was "commenting on the results of a peer review of the polar bear section of the draft BRD Report. He [was] giving his thoughts on the relevance of the comments and how they fit into any further efforts on his part to work on that section. He is circulating his comments

and asking for guidance." Ex. L at 35, Doc 104. Similarly, Doc 253 is an email whose subject is "proportions in high-low predation risk." Ex. L at 83, Doc 253. It was released with some redactions, "in which [the sender] is explaining what he has done on the additional development scenarios task, and is asking questions about how to proceed." *Id.* Doc 19 is an email titled "snow geese." Ex. L at 7, Doc 19. One paragraph was redacted because it contains an employee's explanation as to "why he mentioned certain items in the draft report that the email is discussing ... [and his] arguments in favor of including the subject material." *Id.* These kinds of email exchanges constitute the workings of the deliberative process: DOI employees commenting, critiquing, editing, arguing, and finally resolving how they think the information for the BRD Report should be drafted, analyzed, and presented.

█ However, Plaintiffs raise a more serious complaint about the withholding of the entirety of Doc 1 on the *Vaughn* index for the BRD Request. Ex. L at 1, Doc 1. This document is a draft of the BRD Report, which was circulated by the USGS Alaska Science Center to senior Department officials for review and comment. The draft BRD Report was clearly a recommendation from USGS and was subject to review and modification. It was predecisional and exempt under Exemption 5. What is less clear is why the "summaries of biological investigations on key terrestrial wildlife species and their habitats" in ANWR should also be exempt. *See id.* The Government states that this draft was a "preliminary effort" that "contains the USGS-recommended manner in which to present the summaries of the biological investigations, and its consideration of how to finalize the report for publication." *Id.* Without a better description by which to

discern whether these summaries are merely reports of past scientific work or truly predecisional drafts, the Court cannot conclude that Exemption 5 applies. Defendants' motion for summary judgment as to these summaries, but not the draft BRD Report itself, will be denied without prejudice and, in this respect, Plaintiffs' cross-motion for summary judgment will be granted. DOI will be ordered to release the summaries or to provide a better description of their exempt status.

E. *Public Interest*

█ Plaintiffs assert that the Court must "determine whether the public interest in disclosure of withheld documents outweighs the government's incidental interest in secrecy." Pls.' Mem. at 24. This argument misconstrues FOIA's exemptions. Once a document is deemed exempt from disclosure pursuant to Exemption 5, there is no need for the court to consider the public interest in disclosure. Indeed, "once a government agency makes a prima facie showing of privilege, the analysis under FOIA Exemption 5 ceases, and does not proceed to the balancing of interests." *Bilbrey v. U.S. Dep't of the Air Force,* No. 00–0539 (W.D.Mo. Jan. 30, 2001), *slip op.* at 11, *aff'd,* 20 Fed.Appx. 597, 2001 WL 1222471 (8th Cir.2001); *see In Re Sealed Case,* 121 F.3d 729, 737 & n. 5 (D.C.Cir.1997)(noting that while the deliberative process privilege "can be overcome by a sufficient showing of need" in the civil discovery context, "[t]his characteristic of the deliberative process privilege is not an issue in FOIA cases because the courts have held that the particular purpose for which a FOIA plaintiff seeks information is not relevant in determining whether FOIA requires disclosure."). Therefore, it is clear that despite the "public interest" that may exist in the disclosure of withheld documents, this interest

**30**

cannot overcome Exemption 5 in a FOIA case.

### F. APA Allegations

Plaintiffs also bring a complaint under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, alleging that DOI has a "policy and practice of not responding to requests for records as required by FOIA," and a "policy of refusing to grant fee waiver requests . . . when the information sought is likely to contribute significantly to public understanding of the operations of government, 5 U.S.C. § 552(a)(4)(A)(iii)." Compl., ¶¶ 79–80; Am. Compl., ¶¶ 89–90 (same). The Government moves for judgment on the pleadings with regard to this claim.[10]

■■■ The FOIA itself provides an adequate remedy for Plaintiffs' claims and separate APA review is not available. See 5 U.S.C. § 703 (APA review available "except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law"); 5 U.S.C. § 704 (APA review of actions "for which there is no other adequate remedy in a court . . ."). "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action." Bowen v. Massachusetts, 487 U.S. 879, 903, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988); Women's Equity Action League v. Cavazos, 906 F.2d 742, 750–51 (D.C.Cir.1990)(noting that an "adequate" statutory remedy is "preclusive of a default remedy under the APA"); First National Bank of Scotia v. United States, 530 F.Supp. at 162, 167 (D.D.C.1982) ("It is . . . well-settled that where Congress has

provided an adequate procedure to obtain judicial review of agency action, that statutory provision is the exclusive means of obtaining judicial review in those situations to which it applies."). Since the FOIA specifically provides for judicial review of agency decisions to withhold documents or deny fee waivers, 5 U.S.C. §§ 552(a)(4)(A)(vii), (a)(4)(B), it contains the procedure for judicial review of the challenged agency actions here.

Plaintiffs resist this conclusion by advancing a "policy and practice" claim relating to late FOIA responses and resistance to fee-waiver requests. They cite Payne Enterprises, Inc. v. United States, 837 F.2d 486 (D.C.Cir.1988), as support for their claim that a practice of denying FOIA requests until a requester appeals violates FOIA. While the concept is sound, Payne does not support the claims here. In Payne, the FOIA requester sought certain bid documents from Air Force bases. These requests were uniformly denied with a "perfunctor[y]" reliance on FOIA Exemptions 4 and 5. Id. at 486. "Payne appealed these denials to the Secretary of the Air Force, who without exception ordered disclosure." Id. The district court dismissed Payne's complaint as moot because the documents were invariably released after administrative appeal. The circuit court reversed "[b]ecause the Air Force ha[d] admitted that the information initially denied Payne does not fall within FOIA Exemptions 4 and 5, and because the repeated delays Payne suffered in securing that information pursuant to an Air Force practice constitute clear violations of

---

**10.** DOI filed an answer to the original complaint but no answer with respect to the amended complaint; instead, the Scheduling Order allowed it to file a dispositive motion. Inasmuch as the claims in the complaint and in the amended complaint are identical, the Court will consider the answer to the original

complaint and rule on DOI's motion as a motion for judgment on the pleadings under FED. R. CIV. P. 12(c). Plaintiffs filed an amended complaint because the original complaint lacked any factual basis to support its APA claim.

the FOIA." *Id.* at 488. This case is very different from *Payne*.

In this case, Plaintiffs filed an extremely broad ANWR Request and refused to limit it in any way. This may be their right under FOIA but the combination of an onerous Request and a refusal to reasonably modify it or to arrange an alternative time frame for release of documents certainly constituted "unusual circumstances" that relieved the DOI of the normal timelines for release of documents under FOIA. *See* 5 U.S.C. § 552(a)(6)(B)(ii). In addition, "the need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records which [were] demanded in [this] single request" constituted unusual circumstances, altering normal deadlines. 5 U.S.C. § 552(a)(6)(B)(iii)(II). Because Plaintiffs and DOI did not agree to an alternative time frame, DOI was obligated to process the ANWR Request with due diligence and without unnecessary delay. Plaintiffs offer no rebuttal to the Appler Declaration, which explains the factual reasons for the delay, including loss of staff resources, other litigation, and a significant increase in the number of FOIA requests received by the OS. The two *Vaughn* indices, at Exhibits K and L, illustrate the careful nature of the review and partial redactions of hundreds of pages of emails. It is not possible on this record to find that the Government violated FOIA by not releasing the documents responsive to the ANWR or BRD Requests more immediately.

This leads us to the second reason that this case is distinguishable from *Payne*. Unlike Payne Enterprises, Plaintiffs here have very little basis for their challenge. They failed to arrange an alternative time frame for release, or even a staged release, which left them at the mercy of the DOI FOIA Office's other duties and priorities, which the Court finds have been reasonably explained. Upon receiving Exhibits K and L, Plaintiffs then proceeded to challenge virtually every decision to withhold a document in whole or in part. This has required a laborious effort on the part of the Government and the Court to analyze their challenges, almost all of which have no merit and many of which have no merit on their face.

## IV. CONCLUSION

FOIA is a crucial vehicle for Americans to learn of the activities of their Government. It can be broken, however, and *all* FOIA requesters injured, by discovery-type requests, intransigence in negotiating sensible contours to a broad request, and litigation that has little merit. In this action, Plaintiffs come perilously close to breaking the very statute on which they are relying.

Defendants' motions will be granted in part and denied in part. Plaintiffs' cross-motions will be granted in part and denied in part. With respect to the ANWR Request, Defendants' motion for summary judgment is granted, except as to the withholding of Doc 39. In this respect, Plaintiffs' cross-motion for summary judgment is granted and DOI is ordered to release Doc 39 or to provide a better description of its exempt status. With respect to the BRD Request, Defendants' motion for summary judgment is granted, except as to the withholding of the entirety of Doc 1. Defendants' motion for summary judgment as to the "summaries of biological investigations" contained in Doc 1 is denied without prejudice and, in this respect, Plaintiffs' cross-motion for summary judgment is granted. DOI is ordered to release the summaries or to provide a better description of their exempt status. Finally, Plaintiffs' APA claim is dismissed with prejudice and the Court will enter judgment in favor of Defendants on this count.

**32**

A separate Order accompanies this memorandum opinion.

### ORDER

For the reasons stated in the Memorandum Opinion separately and contemporaneously issued this 6th day of December, 2004, it is hereby

**ORDERED** that the Defendants' Motion for Summary Judgment is hereby **GRANTED** in part and **DENIED** in part; and it is

**FURTHER ORDERED** that Plaintiffs' Cross Motion for Summary Judgment is hereby **GRANTED** in part and **DENIED** in part, and it is

**FURTHER ORDERED** that Judgment is entered in favor of Defendants and against Plaintiffs on Claims 1 and 2 of Plaintiffs' First Amended and Supplementary Complaint for Declaratory and Injunctive Relief ("Amended Complaint"), except as to Document 39 of Exhibit K and the summaries contained in Document 1 of Exhibit L. With respect to these documents, Defendants' Motion for Summary Judgment is **DENIED** without prejudice and Plaintiffs' Cross Motion for Summary Judgment is granted, and it is

**FURTHER ORDERED** that Defendants are hereby ordered to release Document 39 of Exhibit K and the summaries contained in Document 1 of Exhibit L or provide a better description of their exempt status by no later than December 20, 2004, and it is

**FURTHER ORDERED** that Claim 3 of Plaintiffs' Amended Complaint is hereby **DISMISSED** with prejudice.

**SO ORDERED.**